**STATE of Tennessee, Plaintiff-Appellee,**

v.

**Richard W. SIMON,
Defendant-Appellant.**

Supreme Court of Tennessee,
at Nashville.

June 1, 1982.

James A. Delanis, Asst. Atty. Gen., Nashville, for plaintiff-appellee; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Robert W. Wedemeyer, Clarksville, Gerald M. Werksman, Chicago, Ill., for defendant-appellant.

OPINION

HARBISON, Chief Justice.

Appellant was convicted of first-degree murder committed during the perpetration of a robbery. He was sentenced to death. Some twenty-three issues have been presented for review in his appeal to this Court.

Despite the numerous issues urged on appeal, there is no challenge to the sufficiency of the convicting evidence. The testimony concerning the robbery and homicide is uncontradicted except for minor details and clearly establishes the guilt of appellant.

The crime occurred on the evening of Sunday, April 22, 1979, at about 11:30 p. m. Appellant and five other young men, two of them juveniles, had been riding around Clarksville and its vicinity since the early part of the evening. They had planned to rob another establishment but when they went to it no one responded. They then decided to rob the mobile home of Mr. and Mrs. Paul Burkhart, which served as their residence and also as an office for a trailer park which they operated. One of the juveniles in the group was a student in a high school attended by the daughter of Mr. and Mrs. Burkhart, and the daughter had told him that the Burkharts kept a large amount of cash in their mobile home.

The group went to the premises of the trailer park in two automobiles. The driver of one vehicle and a companion waited outside the park during the commission of the robbery. Appellant was riding in the other automobile driven by Malcolm Gray. They were accompanied by Larry Simpson and a juvenile named Everett Ogburn. Ogburn did not get out of the vehicle, but the other three went to the door of the Burkhart trailer and knocked. When Mr. Burkhart answered, they forced their way into the living room and demanded money. Appellant was armed with a .38 caliber pistol and Gray with a shotgun. Gray and Simpson wore stocking masks, but appellant was not masked.

Mr. Burkhart told the intruders where a money box was kept in the den. Appellant and his companions went into the den, and at that point Mrs. Burkhart came down the hall of the trailer to the doorway of the den. Appellant grabbed her around the waist, wrestled her to the floor and put his gun to her neck. He then shot her through the neck, severing the jugular vein. She bled to death within a short time thereafter. Without attempting to assist her, appellant and his companions seized the money box and fled. The helpless bleeding victim attempted to use the telephone, but was unable to do so. Her husband and children called for help and attempted to staunch the flow of blood without success. The victim at no time offered any resistance to appellant, was unarmed, and weighed only about 110 pounds. The shooting was unprovoked, and no excuse has been offered for it, except that in a signed statement appellant indicated that the shooting was accidental and that he did not intend to harm the victim. Appellant did not take the stand in his defense at any stage of the lengthy trial.

Appellant and his companions divided the money, threw away the weapons they were carrying and made every effort to conceal their participation in the crime. Appellant left Clarksville the next day and flew to Chicago, where he was apprehended by the police several days later. He gave the police a statement strongly incriminating himself and admitting his participation in the robbery, although denying any intention to injure or kill the victim.

Mr. Burkhart identified appellant without hesitation. The vehicle in which appellant and his companions had arrived at the trailer was identified by the son and daughter of the deceased and by a witness who lived in a trailer across the street from the Burkhart home. The juvenile who had accompanied appellant and his companions, Everett Ogburn, testified at the trial and described the events of the evening. Thomas Mickens, who had driven the other vehicle and who was being held in jail on a murder charge in connection with this case, confirmed Ogburn's account of the activi-

ties of the evening and of the events prior to and after the robbery. The weapons used in the robbery were recovered. A firearms expert testified that the pistol used by appellant was not equipped with a hair trigger and that normal pressure was required to pull the trigger in order to fire it. Redacted statements from Gray and Simpson corroborated generally the testimony given by the other witnesses and the events summarized above although in their redacted form they did not directly identify appellant as the person who fired the pistol.

■ There can be no question from the record, therefore, that appellant killed an innocent and unresisting victim during the course of a planned, premeditated robbery. Whether the shooting was accidental or intentional was clearly a question for the jury. Material evidence supports their verdict that it was not accidental but was accomplished by appellant either intentionally or with complete recklessness and indifference to the fate of the victim.

After a lengthy trial, the jury found appellant guilty of murder in the first degree. Following a sentencing hearing they found that the homicide was committed during the perpetration of a robbery and that there were no mitigating circumstances sufficient to outweigh this statutory aggravating circumstance. T.C.A. § 39–2404(i)(7). Accordingly they imposed the death penalty.

■ One of the issues presented for review is that mitigating circumstances outweighed the aggravating circumstance proved at the trial. We find this issue to be without merit. The principal mitigating circumstances advanced during the sentencing hearing were appellant's youth, since he was only nineteen years of age on the date of the homicide, and the absence of any prior criminal convictions. The testimony showed, however, that he had been in trouble with the law on several occasions while a juvenile. He had completed a tour of military service at a base near Clarksville some time prior to the events involved here, and had returned to Clarksville to stay with friends.

In our opinion the mitigating circumstances did not outweigh the aggravating circumstance established by the State's proof, nor was the sentence of death disproportionate when all of the facts and circumstances are considered. The death penalty has been approved by this Court with review denied by the United States Supreme Court in at least two other cases, involving three defendants who committed murder during the perpetration of armed robberies. *See Houston v. State*, 593 S.W.2d 267 (Tenn. 1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); *State v. Dicks*, 615 S.W.2d 126 (Tenn.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981); *State v. Strouth*, 620 S.W.2d 467 (Tenn.1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982). The facts and circumstances of neither of those cases were any more shocking, heartless or ruthless than those shown here, where appellant and his companions deliberately planned the robbery, entered into a private home late at night, robbed the premises and shot to death a housewife and mother without the slightest provocation or excuse. Certainly we cannot say that the verdict of the jury was arbitrary, capricious, unwarranted or disproportionate to sentences previously approved in similar cases.

■ Many of the issues urged on appeal are without substance and require little discussion. The crime occurred on April 22, 1979. Appellant and his codefendants, Gray, Simpson and Mickens were indicted on May 22, 1979. The trial of Mickens was later severed from that of the other three. Appellant, Gray and Simpson were brought to trial jointly on March 24, 1980, approximately eleven months after the crime and about ten months after the indictment. In the interim there were numerous motions filed by appellant and his codefendants, and the case was continued once at their request. Appellant urges that the proceedings should be dismissed for lack of a speedy trial. We find this issue to be without merit. The elapsed time between indictment and trial was relatively short. It was fully explained in the record and no

prejudice whatever to appellant based upon lapse of time has been suggested.

■ It is insisted that the trial court should have appointed additional counsel to represent appellant. He was the only one of the three codefendants to receive the death penalty, the other two being found guilty of murder in the first degree and sentenced to life imprisonment. The proof developed without contradiction, however, that appellant was the person who seized the victim and then shot her, without any apparent assistance from the codefendants; while this does not legally minimize their guilt, certainly the jury was entitled to take into account the fact that appellant was the "trigger man" and to make a distinction between him and the codefendants.

For some time after the crime, however, it was not known which of the three defendants fired the shot. Different and conflicting stories were given to the police by witnesses during the course of the investigation. When the four original defendants were indicted, the trial court appointed counsel for all of them. Counsel appointed to represent appellant had been licensed to practice law for a little over two years prior to his appointment in the present case and had been practicing for just under three years when trial commenced. The record demonstrates, however, that he filed numerous pretrial motions on behalf of appellant and participated ably and competently in the trial. He has represented his client most ably in this appeal. On the present record we find that appellant has had the full and able assistance of competent counsel.

As a matter of practice, in our opinion, a trial judge should appoint more experienced counsel to represent persons against whom the death penalty is sought, particularly where there is only one defendant or where the identity of the accused most likely to receive the death penalty is known. In the present case, however, the trial judge may not have known at the time of the indictment which of the four accused persons fired the shot, and the attorney whom he appointed to represent appellant proved to be most able and diligent in the preparation and trial of this case, insofar as the present record reveals.

■ Equally without merit is the contention that the trial judge should have ordered the state to furnish a complete trial transcript to counsel for appellant prior to his filing a motion for a new trial. There is no suggestion or indication that appellant or his counsel has been in any way impeded in the preparation of a post-trial motion or appeal. The motion for a new trial, as amended, contained forty-three grounds, and it seems to us that every conceivable issue which could be presented on behalf of appellant was raised both in the motion for new trial and in this appeal.

■ During the course of the trial two photographs of the victim were admitted into evidence. These were small black and white snapshots. These were not particularly inflammatory and did tend to illustrate the type of wound inflicted upon the victim and the position of her body when she was shot. In our opinion the trial judge did not abuse his discretion in admitting them into evidence. *State v. Banks*, 564 S.W.2d 947 (Tenn.1978). Appellant insists that the Assistant Attorney General was guilty of improper argument in referring to himself as "The People's Attorney" or representative of "the people" and in making derogatory comments about the defendants. The trial judge sustained an objection to one derogatory comment, and we find that the other comments made by the prosecutor were within the bounds of propriety. The assignment is overruled.

■ Equally without merit is the contention that the trial judge erred in permitting the State to dismiss the first count of the indictment and to proceed against appellant and his codefendants only on a second count charging felony-murder. It developed that there was omitted from the first count certain language necessary to charge murder in the first degree under the common law, and for this reason the State requested and was granted permission to dismiss that count. A similar issue was recently

presented to this Court in the case of *State v. Harrington*, 627 S.W.2d 345 (Tenn.1981). For the reasons stated in that opinion we find this issue to be without merit. The dismissal of the first count could not have prejudiced appellant in his defense of the second count which clearly charged felony-murder.

In the *Harrington* case it was insisted that the defendant was denied an opportunity to present a claim of self-defense because the State dismissed the common law count. There is no suggestion of such a claim in the present case nor any other showing of prejudice to the defendant by the election of the State to proceed on the felony-murder count alone.

■ Appellant claims a violation of his right of confrontation in the admission of a redacted statement from his codefendant Malcolm Gray. As read to the jury, the redacted statement, referring to events after the homicide, contains the following:

"While I was driving, there was a discussion, and it was said, 'Yeah, I shot the bitch.' 'What happened,' I said. 'But you shot her. You shot her.' I said, 'You didn't have to shoot her.'"

Counsel for appellant had suggested a somewhat different form of redaction of the original statement. The original quoted appellant as saying that he shot the victim and contained the laconic expression, "So what." The latter phrase does not appear in the form of the statement which was read to the jury.

While the form of redaction suggested by counsel for appellant might have been preferable, we do not believe that reversible error was committed by permitting the version quoted above. Here there were interlocking confessions of all three persons on trial, and the confessions were read late in the proceedings after other irrefutable evidence had already been introduced that appellant fired the shot. We find no violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and even if there had been, under the circumstances shown in this record any error that might

have resulted would have been harmless beyond a reasonable doubt.

■ Appellant insists that the trial judge erred in admitting into evidence a shotgun which had been carried by Malcolm Gray. The shotgun was found in a field near Gray's residence, where it had been thrown as appellant and his companions were returning from the Burkhart trailer. It is contended that the weapon was the fruit of an illegal search. The record indicates, however, that Gray consented to the search. Further, there is no indication that appellant had any interest either in the weapon or the premises searched so as to confer standing upon him to raise this issue. The assignment is overruled.

■ The trial court admitted into evidence the deposition of a witness, Eduardo Ortegon, who lived across the street from the Burkhart trailer on the date of the robbery. He had observed the arrival of the automobile in which appellant was riding, had observed the armed robbers forcing their way into the Burkhart residence, and had called the police. He was in military service, and it was necessary for him to leave the state prior to the date of the trial. The trial judge permitted the deposition to be taken in accordance with Rule 15, Tennessee Rules of Criminal Procedure. We find no error in the procedure which was followed in the taking of the deposition or in its use at trial. The trial judge excluded that portion of the cross-examination of the witness taken by counsel for Mickens, the severed defendant, but appellant has not suggested that any prejudice to him occurred as a result of that decision. We find the issue to be without merit.

■ We find no abuse of discretion by the trial judge in permitting the State to cross-examine the juvenile witness, Everett Ogburn, after he had given testimony contrary to recorded statements which he had earlier made to the prosecutor. Equally without merit is the objection to a statement made by appellant to a local police officer, Marshall Ryan. The evidence both at the trial and at a pretrial motion to

suppress established that the statement was voluntary. Further it consisted of nothing more than a demonstration by appellant of his contention that the shooting was accidental and it corroborated a former written statement given by appellant to police officers in Chicago. No prejudice to appellant could have resulted from the testimony of officer Ryan, particularly in view of testimony previously given in the case by Mr. Burkhart and other witnesses.

■ Appellant insists that the trial judge erroneously refused to instruct the jury upon the legal effect of their failure to reach agreement on the issue of punishment. Such instructions are specifically prohibited by statutes dealing with the death penalty. T.C.A. § 39–2404(h). A similar argument was considered and rejected by the Court in *Houston v. State*, 593 S.W.2d 267 (Tenn.1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980), and in *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981).

■ We likewise find no error in the failure of the trial judge to charge certain lesser included offenses urged by appellant. The trial judge did charge on the lesser included offenses of robbery, murder in the second degree, voluntary manslaughter, involuntary manslaughter, aiding and abetting, and conspiracy. Appellant insists that other lesser included offenses should have been included in the instructions, particularly those dealing with an attempt to commit certain offenses. The evidence clearly showed, however, that appellant was guilty of the greater offenses charged or nothing at all. The failure of the trial judge to charge on the requested offenses was therefore not prejudicial or reversible. *See Johnson v. State*, 531 S.W.2d 558 (Tenn. 1975).

■ After the guilt phase of the trial and during the sentencing hearing an anonymous note was found on the back of a legal pad in the jury room. The trial judge questioned the jurors concerning this note. He ascertained that none of them had any knowledge about it and that it would have no influence upon their decision. Under the circumstances we are of the opinion that the trial judge was not required to grant a mistrial and that the procedure which he followed was appropriate.

■ At the sentencing phase appellant offered testimony to the effect that the death penalty was not a deterrent to homicide. The trial judge deemed this testimony irrelevant and excluded it. We find no error in this regard. *See State v. Johnson*, 632 S.W.2d 542 (Tenn.1982).

■ Appellant insists that the trial judge committed error in conducting trial sessions into the late afternoon and evenings, resulting in fatigue to counsel and to the jury. At no point, however, did the trial judge hold court beyond 9 p. m. and this on only three occasions. We find no abuse of his discretion. There is nothing in the record to document appellant's contention that his decision not to testify at any stage of the trial was affected by the length of the trial sessions.

■ There was considerable pre-trial publicity concerning this criminal episode, both at the time it occurred and shortly before the trial. Appellant and his codefendants were black, and there were demonstrations in the Clarksville area by civil rights groups, but these generally favored appellant and his codefendants, rather than the contrary. Counsel for appellant and for his codefendants moved for a change of venue, and this motion was seriously considered by the trial judge. Ultimately, however, he overruled the motion and we are unable to conclude that he abused his discretion or that the pre-trial publicity so tainted the jury venire as to preclude a fair trial in Montgomery County. The decision of the trial judge not to order a change of venue will be upheld absent a clear showing of abuse of discretion. *Swain v. State*, 219 Tenn. 145, 407 S.W.2d 452 (1966); *Adams v. State*, 563 S.W.2d 804 (Tenn.Cr.App.1978). The same is true with respect to the granting of a continuance, which was sought by appellant and his codefendants shortly be-

fore the trial. The publicity surrounding the trial was extensive, but was neither inflammatory nor unfair. These assignments are overruled.

■ Appellant insists that counsel were not provided with a list of prospective jurors in compliance with Rule 24(g) Tennessee Rules of Criminal Procedure. It does appear, however, that counsel were furnished with such a list on the first day of the trial. The trial court impaneled a special venire, and no prejudice to appellant has been demonstrated because the jury list was not available at an earlier date.

Appellant insists that the trial court erred in not permitting individual voir dire examination of the jurors. It appears, however, that the trial judge did permit counsel to examine prospective jurors individually concerning pre-trial publicity after the first two days of the voir dire examination.

The voir dire in this case consumed six full trial days, sometimes running into the evening. It comprises over fifteen hundred pages of transcript.

■ It was stated by this Court in *Sommerville v. State*, 521 S.W.2d 792, 797 (Tenn.1975) that individual examination of prospective jurors should be permitted outside the presence of other chosen and prospective jurors when the venire have been exposed to potentially prejudicial material. Nevertheless the trial judge has wide discretion in the method followed, subject to the Rules of Criminal Procedure, and we are unable to find any abuse of discretion by the trial judge in the method which was employed in the present case. We also find without merit appellant's insistence that several jurors were held by the trial judge to be qualified when they should have been excluded for cause. The juror most objected to by counsel for appellant in his brief was ultimately excused by peremptory challenge and did not participate in the trial. As previously stated, the voir dire examination was extremely lengthy and voluminous, and counsel were allowed to ask wide-ranging questions of the prospective jurors. We find no reversible error in the rulings of the trial court either in declining to discharge jurors for cause or in excluding certain jurors who stated unequivocally that they could not, under any circumstances, consider imposition of the death penalty. These assignments are overruled. There were several close questions presented in the examination of the jurors in this regard. This Court has not hesitated to set aside a death penalty when it felt that the trial judge had improperly disqualified jurors under the decision of the Supreme Court of the United States in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and its progeny. *See State v. Harrington*, 627 S.W.2d 345 (Tenn.1981). We find no such violation here.

The single assignment made by appellant which has caused us most concern has to do with the interpretation given by the trial judge to Rule 24(c), Tennessee Rules of Criminal Procedure, governing the exercise of peremptory challenges. The interpretation given by the trial judge in this case is consistent with that approved by the Court of Criminal Appeals in several unreported cases,[1] but it is one with which we find ourselves in disagreement.

Rule 24(d) prescribes the number of peremptory challenges available to an accused and to the State in criminal cases. Insofar as pertinent here, Rule 24(d) provides:

"If the offense charged is punishable by death, each defendant is entitled to fifteen peremptory challenges and the state is entitled to eight peremptory challenges for each defendant."

As applied to the trial here under consideration, the State would have been entitled to a total of twenty-four peremptory challenges and the defendants to a total of forty-five. Under rules prevailing prior to the adoption of the Rules of Criminal Procedure, peremptory challenges were usually exercised in open court and in the presence of the prospective jurors. If more than one defendant was on trial in a criminal case,

---

1. *State v. Sanchez* (Tenn.Crim.App. May 28, 1980); *State v. Gray* (Tenn.Crim.App. Nov. 19, 1980); *State v. Alexander* (Tenn.Crim.App. July 7, 1981).

the exercise of a peremptory challenge by one defendant excluded the juror as to all. *Hill v. State*, 10 Tenn. (2 Yerg.) 246 (1829). By collaborating with each other, counsel for codefendants could thus assure that each defendant independently received the maximum number of peremptories to which he was entitled. Whether such collaboration would occur in a given case, of course, was a matter of strategy to be determined by the participating attorneys.

Trial lawyers have long been sensitive to the delicate problems presented when peremptory challenges are exercised in open court and in the hearing of jurors already tentatively accepted and other prospective jurors who may be in the courtroom. The Rules of Civil Procedure and related statutes are silent as to the method of exercising peremptory challenges, and the procedure is generally left to the discretion of the trial judge. T.R.C.P. 47; T.C.A. § 22–3–105. The importance attached by the trial bar to the voir dire examination and the right of counsel to participate therein, however, is illustrated by T.C.A. § 22–3–101, enacted in 1977, as follows:

> "Parties in civil and criminal cases or their attorneys shall have an absolute right to examine prospective jurors in such cases, notwithstanding any rule of procedure or practice of court to the contrary."

When the Rules of Criminal Procedure were formulated, the Advisory Committee recommended, and this Court adopted, a method of exercising peremptory challenges in criminal cases which was designed to protect the confidentiality of the process and to avoid embarrassment of counsel or their clients. Rule 24(c), Tennessee Rules of Criminal Procedure, provides as follows:

> "After twelve prospective jurors have been passed for cause, counsel will submit simultaneously and in writing, to the trial judge, the name of any juror either counsel elects to challenge peremptorily. Upon each submission each counsel shall submit either his challenge or a blank sheet of paper. Neither party shall make known the fact that he has not chal-

lenged. Replacement jurors will then be examined for cause, and, after passed, counsel will again submit simultaneously, and in writing, to the trial judge the name of any juror counsel elects to challenge peremptorily. This procedure will be followed until a full jury has been selected and accepted by counsel. Peremptory challenges may be directed to any member of the jury, and counsel shall not be limited to replacement jurors. Alternate jurors will be selected in the same manner. The trial judge will keep a list of those challenged and, if the same juror is challenged by both parties, each will be charged with the challenge. The trial judge shall not disclose to any juror the identity of the party challenging him."

This method was already in use in a number of the state and federal trial courts when the rule was adopted. It was followed by the trial judge in the present case. Unfortunately, however, in its drafting, the rule contemplated the trial of a single defendant. It is silent on the method to be used when several defendants are on trial, although the immediately following section guarantees that "each" defendant shall be entitled to a specified number of peremptory challenges.

It was not the intention of the Advisory Committee or of this Court to reduce the number of peremptory challenges available to the State or to either party, except as this might be made inevitable when both the State and the accused challenged the same individual.

In the present case and in the unreported opinions of the Court of Criminal Appeals alluded to previously, counsel for codefendants sought to collaborate or confer with each other in the exercise of peremptory challenges, so as not to duplicate their challenges and thereby, to that extent, reduce the effective number of peremptory challenges available to each. The trial judge expressly prohibited such conference among counsel and instructed them to exercise their peremptory challenges independently of each other and without any sort of consultation.

In this regard, we are of the opinion that the trial judge was in error and that the Court of Criminal Appeals has erred in the past in so interpreting Rule 24(c). It does not prohibit such consultation among counsel, nor is there any indication that it was so intended. It is true that a committee comment to the rule stressed the importance of confidentiality. It states:

"The procedure for exercising peremptory challenges in writing is new and is designed to insulate parties and counsel from the public exercise of a peremptory challenge. Counsel will be expected to honor the spirit of the rule and to maintain the privacy of their respective peremptory challenges.

The latter sentence, in our opinion, refers to counsel not making any sort of remark or giving any indication to seated or prospective jurors as to the source of a challenge. It does not prohibit counsel from conferring among themselves and agreeing upon the "strikes" they will employ. In our opinion Rule 24(c) should be read so as to permit counsel to confer concerning the exercise of their peremptory challenges, when more than one defendant is on trial, but otherwise the procedure followed shall be that stated in the rule. No counsel should give any indication as to the source of a peremptory challenge, and all should be required to hand to the trial judge written statements, showing the juror challenged or indicating that no challenge is being made at that time by a particular attorney. We do not believe that there was any intention, in the promulgation of this rule, to change prior practice with respect to the number of peremptory challenges available, or to impose any limitation upon Rule 24(d) which assures to "each" defendant a specified number of effective peremptory challenges. Only where there is a duplication should more than one defendant be charged with a particular challenge, and such duplications may be minimized or eliminated by consultation among counsel for codefendants if desired.

While we are convinced that this is the proper interpretation of the rule and is the practice which should be followed, the question arises as to whether deviation from it constituted reversible error in the present case. There were some duplications among counsel for codefendants in their peremptory challenges by reason of the directions given by the trial judge prohibiting consultation. Near the end of the voir dire examination of all of the jurors, counsel for appellant exhausted his last peremptory challenge. He thereafter indicated that he would have challenged another juror peremptorily had he been given the opportunity to do so. Neither this juror nor any other juror thereafter impaneled was legally disqualified or incompetent to serve.

We have already indicated that the voir dire examination in this case was massive in scope. The trial judge went to great lengths to assure that a fair and impartial jury was impaneled, and we are of the opinion that any error committed in the control of peremptory challenges in this case was harmless beyond a reasonable doubt and does not require reversal of the conviction. The situation presented here is not without precedent in this state, even in death cases. As important as the voir dire examination and the proper exercise of peremptory challenges undoubtedly are, these procedures are designed to insure the selection of a fair and impartial jury, not to enable the accused himself to select particular jurors. Where those who actually serve are not shown to be legally incompetent or otherwise disqualified for cause, errors in the procedures regarding peremptory challenges have usually been deemed harmless and not to require retrial of a case.

Probably the leading case in this jurisdiction is *Mahon v. State*, 127 Tenn. 535, 156 S.W. 458 (1912). In that case counsel for the accused challenged two jurors for cause, but his challenges were overruled. He then exercised peremptory challenges on these two jurors, so that by the time the twelfth juror was seated the accused had exhausted all of his peremptory challenges. He nevertheless sought to challenge the twelfth juror, and this challenge was overruled because there were no challenges left.

The Supreme Court in reviewing the case determined that the trial judge had ruled erroneously on the first two jurors and that they should have been excluded for cause. In effect, therefore, the accused had erroneously been deprived of two peremptory challenges, and had the trial judge ruled correctly, the accused would have been able to remove the twelfth juror by the exercise of one of these challenges.

This Court found that the trial court was in error in wrongfully denying to the accused one or more peremptory challenges. Nevertheless, the Court cited the recently enacted harmless error statute, 1911 Tenn. Pub.Acts, ch. 32. In light of its provisions, it held that the error was harmless and not reversible, since the twelfth juror seated was shown to have been legally competent and the entire panel as finally constituted was composed of fair and impartial jurors. The Court said:

"The constitution of this State guarantees to the accused a fair and impartial trial, which necessarily includes a trial before a fair and impartial jury. The constitution does not secure to him the right to challenge proposed jurors peremptorily. This is a privilege only granted to the accused as a matter of free grace by the legislature. It does secure him the right to challenge for any cause which renders the jury partial, because it is only in this way that its guaranty of a fair and impartial trial can be secured to him in the practical administration of justice. The right of peremptory challenge, which means the right to stand aside a proposed juror without any assigned cause other than the mere objection of the accused, is a right that can be regulated by statute. As was well said in Wooten v. State, supra, [99 Tenn. 189, 41 S.W. 813 (1897)], 'The right to challenge is a right to reject, not to select a jury. If from those who remain an impartial jury is obtained, the constitutional right of the accused is maintained.' Chapter 32 of the Acts of 1911, supra, can and does regulate the procedure of this court in so far as it does not infringe upon the constitutional right of a fair and impartial trial. As the legislature gave to the accused the right to challenge peremptorily, it may take it away; and by the same reasoning, it may regulate and limit the power of this Court in granting new trials for a refusal of the trial judge to allow such challenges. As applied to this case, the statute referred to merely says in effect that, although the accused may be deprived of the statutory number of peremptory challenges, yet, unless it appear that he was denied a trial by a fair and impartial jury, no new trial shall be had. . . .

"It is not within the power of the legislature to infringe upon the constitutional guaranty of a fair and impartial trial before a fair and impartial jury, but there is no insistence in this case that the trial jury was not unobjectionable in every legal sense. The complaint is that plaintiff in error was denied certain peremptory challenges, and in that way he was compelled to accept upon the jury one juror who was objectionable to him for some reason not assigned, but who was admittedly competent and qualified under the law. Construed in this way, and as regulating the procedure of this court to this extent, chapter 32, Acts of 1911, is not obnoxious to any provision of the constitution, and does no violence to any constitutional right of the accused." 127 Tenn. at 546–548.

This case has been cited and followed on numerous occasions. In *Manning v. State*, 155 Tenn. (2 Smith) 266, 292 S.W. 451 (1927), a jury had been seated and the trial had proceeded until all of the evidence was introduced. Thereafter one of the jurors improperly separated from the others, escaped custody of the jury officer and remained at large for three days. When brought back into custody, he was punished for contempt and dismissed from the jury. Counsel for the accused then moved for a mistrial, but this motion was overruled. The trial judge then proceeded to impanel a replacement juror. Counsel for the accused insisted upon the right to use peremptory challenges not only for the additional juror

but for the entire panel. The trial judge, however, limited the accused to one remaining unexhausted peremptory challenge which he had from the initial impaneling of the jury. He exhausted that challenge and thereafter sought unsuccessfully to exercise additional peremptory challenges. Upon appeal this Court affirmed the procedure employed by the trial judge. The Court said:

"In *Mahon v. State*, 127 Tenn. 535 [156 S.W. 458], it is said that the Constitution guarantees the accused a fair and impartial trial which necessarily includes a trial before a fair and impartial jury. But the constitution does not secure the accused the right to challenge proposed jurors, for that is a right which may be taken away by the legislature. At common law thirty-five challenges, one short of three juries were allowed the accused, but if he challenged a greater number the law pronounced death upon him, if on trial for treason, and for lesser felony subjected him to *piene fort et dure*, or mercifully hanged him. The right of challenge has been reduced in this State to fifteen, but without bringing forward the unreasonable practices of the common law attendant upon an improvident use of challenges.

"Here the accused was given the right to exercise fifteen peremptory challenges, and the right to challenge for cause in selecting the original twelve jurors.. During the progress of the trial one of the original jurors was guilty of such conduct as would have vitiated the verdict had he participated in it, and the trial judge of necessity dismissed him. The vacancy was supplied and the accused was allowed to use the remaining challenges in finally making the jury which tried the cause. The witnesses were re-examined and the cause was heard by twelve jurors." 155 Tenn. at 275–276, 292 S.W. 451.

The Court held that since all of the jurors who were finally impaneled were impartial and not shown to be disqualified for cause, no error requiring reversal had occurred.

In *Kirkendoll v. State*, 198 Tenn. 497, 281 S.W.2d 243 (1955), a case in which the death penalty was upheld, the trial judge erroneously denied counsel for the accused the right to exercise a peremptory challenge as to a juror who had been unsuccessfully challenged for cause. The juror had been accepted by both parties, but apparently had not been sworn. The Court said:

"We have very recently held that a peremptory challenge of a juror may be made at any time before the jury is sworn. *Estep v. State*, 193 Tenn. 222, 245 S.W.(2d) 623, 625. It is equally well settled, though, that the erroneous denial of a peremptory challenge is not ground for reversal if the jury is composed of unbiased and unprejudiced jurors." 198 Tenn. at 508–509, 281 S.W.2d 243.

Cited in support of this holding was the case of *Mahon v. State, supra,* and *Long v. State*, 187 Tenn. 139, 213 S.W.2d 37 (1948). Because the Court found that the juror unsuccessfully challenged was legally qualified, it declined to reverse the conviction or to set aside the death penalty.

In one of the cases just cited, *Long v. State, supra,* it was alleged that the trial court had erroneously overruled a challenge for cause and forced the defendant to exhaust one of his peremptory challenges. He was thereafter unable to challenge peremptorily a twelfth juror whom he would otherwise have excluded from the jury. Again, because the juror was found to have been legally qualified, any error was found to be harmless.[2]

■ In light of these cases, in our opinion the fact that the trial judge erroneously prohibited counsel for the codefendants from consulting and thereby may have caused premature exhaustion of appellant's peremptory challenges does not require reversal since no juror who was actually seat-

**2.** *See also State v. Wingard*, 480 S.W.2d 915 (Tenn.1972) (excessive peremptories allowed to State held harmless error); *Nelson v. State*, 200 Tenn. 462, 292 S.W.2d 727 (1956), *cert. denied,*

355 U.S. 327, 78 S.Ct. 327, 2 L.Ed.2d 257 (1957) (same); *England v. State*, 196 Tenn. 186, 264 S.W.2d 815 (1954) (juror peremptorily challenged but inadvertently re-seated).

ed is shown to have been legally disqualified, biased or prejudiced. The assignment is overruled. In the future, however, we are of the opinion that trial judges should permit cooperation and collaboration among counsel for codefendants so long as this is conducted in such manner that the identity of a party exercising a peremptory challenge, whether this be one of the codefendants or the State, shall not be disclosed to other seated or prospective jurors.

All assignments of error are overruled and the judgment of the trial court is affirmed. The sentence will be carried out as provided by law on August 31, 1982, unless otherwise ordered by this Court or by other proper authority. Costs are taxed to appellant.

Justice Brock concurs in the foregoing opinion except for the imposition of the death penalty. He dissents in that regard for reasons stated in his dissenting opinion in *State v. Dicks*, 615 S.W.2d 126, 132 (Tenn.1981).

FONES, COOPER and DROWOTA, JJ., concur.

BROCK, J., partially dissented.