IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2013

**MICHAEL D. GREEN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 231307       Don W. Poole, Judge**

**No. E2012-01875-CCA-R3-PC - Filed December 11, 2013**

The petitioner, Michael D. Green, appeals the dismissal of his petition for post-conviction relief. The petitioner was convicted of multiple crimes, including first degree felony murder, and received a sentence of life plus twenty-four years. That sentence was ordered to be served concurrently to a federal sentence of life plus twenty-five years. On appeal, the petitioner contends that he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective by: (1) failing to request sequestration of the jury; (2) failing to utilize all available preemptory challenges or to challenge potential jurors for cause; and (3) failing to limit testimony concerning the prior federal trial. Following review of the record, we conclude no error occurred and affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

John Allen Brooks, Chattanooga, Tennessee, for the appellant, Michael D. Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Bill Cox, District Attorney General; and Neal Pinkston, Exec. Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The convictions for which the petitioner is currently incarcerated arose from his involvement in a crime spree committed on three separate days in July 1993. This court, on direct appeal, summarized the facts of the events as follows:

> Proof at the trial showed that on July 6, 1993, [the petitioner], along with four other young men, stole Ms. Davidson's car, then stopped a pedestrian, Mr. Guilmenot, and forced him to disrobe, robbing him of his clothes at gunpoint. They then forced Ms. Morgan's car off the road into a ditch, and robbed her of her purse. Next they forced Ms. Brown and Ms. Wilson off the road, taking money from Ms. Wilson and the car from Ms. Brown, abandoning Ms. Davidson's car. Shortly after midnight, they pulled in front of Mr. Peace's car and robbed him at gunpoint of his wallet, some money and a radio. [The petitioner] next approached Mr. Wolfe and his wife, who were stopped at a red light, put a gun to Mr. Wolfe's head and demanded that they get out of the car. The gun went off, killing Mr. Wolfe. [The petitioner] and the other young men then fled. Three days later, on July 11, 1993, [the petitioner] and some of the same young men stole another car belonging to Ms. Hewlett, and in the process of driving it around, pointed guns at two pedestrians, forcing Ms. Acklin to disrobe and beating Mr. Suttles unconscious. They then forced Mr. Townsend off his porch and robbed him at gunpoint of $50 in cash and $200 in food stamps. The police soon pulled in behind them, and apprehended them after a chase. [The petitioner] was the leader, always displayed a firearm, and was the driver of all the cars used in the crimes.

*State v. Michael Deangelo Green*, No. 03C01-9610-CR-00379, 1998 Tenn. Crim. App. LEXIS 388, *2-3 (Tenn. Crim. App., at Knoxville, Mar. 27, 1998). The petitioner was first tried in the United States District Court for the Eastern District of Tennessee on a six-count indictment, which charged him with, among other offenses, conspiracy to commit armed carjacking resulting in death, based upon the death of Mr. Wolfe. *Id*. at *3. He was convicted in federal court in September 1994 and sentenced to life plus twenty-five years in the penitentiary for those offenses. *Id*. at *4.

Thereafter, the petitioner was subsequently indicted in state court for his actions. Pursuant to multiple indictments, which the State later consolidated, the petitioner was convicted of first degree felony murder, six counts of aggravated robbery, two counts of aggravated assault, attempt to commit especially aggravated robbery, theft of property over $1000, and theft of property over $500. *Id*. at *1. The petitioner was later sentenced to a term of life plus twenty-four years, which was to be served concurrently with his federal

sentence. Following the denial of his motion for new trial, the petitioner timely appealed to this court challenging: (1) whether it was constitutionally permissible to try him in state court following his federal trial on the same facts; (2) whether the trial court erred in denying a change of venue based upon extensive pretrial publicity; (3) whether the trial court erred in failing to strike the testimony of a witness or grant a mistrial when the State failed to turn over a prior statement of that witness upon request; and (4) whether the trial court erred in failing to grant the motion for judgment of acquittal with respect to three counts of the indictment. *Id*. at *3. This court affirmed the petitioner's convictions and sentence, and permission to appeal was denied by the Tennessee Supreme Court on January 25, 1999.

Thereafter, on January 21, 2000, the petitioner filed a timely pro se petition for post-conviction relief alleging ineffective assistance of counsel. The post-conviction court concluded that the petitioner had presented a colorable claim, and counsel was appointed on February 17, 2000. The amended petition asserted ineffective assistance of counsel based upon: failure to properly issue subpoenas in time to ensure witnesses presence at trial; failure to request a continuance until the witnesses could be produced; failure to request a sequestered jury; failure to request the services of an investigator; failure to file a motion in limine to keep information regarding the prior federal trial from the jury; and failure to call a certain witness. Several years later, on July 12, 2012, a hearing was held on the matter before the post-conviction court at which trial counsel and the petitioner testified. The petitioner, who was in federal custody, was not physically present in the courtroom, but he participated through the use of video conferencing.

Trial counsel testified and readily admitted that he did not recollect all the details of his representation of the petitioner over seventeen years earlier. Trial counsel stated that the record would have to speak for itself on many issues. He testified that he was licensed to practice law in 1987 and that his practice, at the time, consisted primarily of criminal defense work in both the federal and state courts.

Trial counsel testified that, while he did not recall specifically, he would not be surprised that he did not request the services of an investigator in this case. He testified that he conducted his own investigation, that he received discovery, and that he spoke with available witnesses. Further, he had the opportunity to watch the petitioner's prior federal trial, which was based upon the same facts. He also shared and discussed information with the lawyer representing the petitioner in the federal case. Trial counsel testified that the proof did not actually present complicated factual issues.

Trial counsel stated that he met with the petitioner numerous times during the course of his representation of the petitioner. He testified that all issues were discussed at length with the petitioner, including the decision not to request sequestration of the jury. Trial

counsel stated that he did file for a change of venue because of the amount of publicity which was garnered by the case. He recalled that over half the potential jurors in the pool indicated some prior knowledge of the case. Further, he recalled that individual voir dire was conducted on those with knowledge. Afterwards, trial counsel felt that sequestration would not be beneficial to his client. He recalled no indication of any outside influence affecting the jury in the case which would have required further action on his part. Trial counsel testified that he felt that venue had been a legitimate issue, but he did not believe sequestration would have had an effect on the verdict.

Trial counsel also deferred to the record and did not dispute the fact that he had utilized only six of his peremptory challenges. He recalled that the petitioner had been involved in jury selection as well. Although he could not recall his exact reasoning at the time, he reasoned that the decision was a trial strategy because "when you like a juror, you like a juror . . . at that time, you have a feeling." He stated that if he had felt they had been needed, he would have exercised the remaining challenges. Trial counsel stated that he was satisfied with the jury and that he did not believe that the use of additional peremptory challenges would have affected the outcome of the case.

Trial counsel testified that he did subpoena numerous witnesses in the case, although he was unable to recall why he had subpoenaed them or if he had spoken with them. He stated that his practice was often to place multiple witnesses under subpoena and only later made a determination if the would be called. However, he was clear that he would not have called a witness to the stand without first speaking with them. He recalled at least one witness in the case with whom he was unable to speak because the witness was represented by counsel. He acknowledged that he only called three witnesses for the defense. However, he testified that he elected not to call certain witnesses, whom the State had also subpoenaed, so he would have the benefit of being able to cross-examine them.

Trial counsel testified that he did not seek to exclude knowledge of the petitioner's prior federal trial from the jury. Rather, he utilized certain witnesses' testimony at the federal trial to impeach them on cross-examination in the state case. Trial counsel testified that, had he moved to exclude that evidence, some of the material he used on cross-examination would have been eliminated.

Trial counsel noted that the issue of whether the petitioner should testify at the state trial was also discussed. The petitioner had testified at the federal trial and presented evidence of an alibi: however, the State was able to present proof which completely contradicted the testimony. Trial counsel acknowledged that he advised the petitioner strongly against testifying in the case.

-4-

The petitioner testified that he was currently incarcerated in a federal prison serving a sentence of life plus twenty-five years. He also acknowledged that he had exhausted all federal appeals. The petitioner stated that, during his representation, he and trial counsel had met together frequently. Trial counsel consulted with the petitioner regarding witnesses which he would have called. The petitioner reviewed a list of numerous possible witnesses, some who did in fact testify at trial, whom he believed that trial counsel should have called. For some, but not all, of those witnesses, the petitioner noted what he believed they would have testified to had they been called. The petitioner was aware that some of the witnesses were under subpoena, and he believed that trial counsel should have called them or asked for a continuance if they were unavailable to testify at trial.

With regard to his testifying, the petitioner testified that trial counsel strongly advised him that he should not testify in his own defense. The petitioner acknowledged that he was aware that he had the right to testify, but stated he relied upon trial counsel's advice. He testified that if trial counsel had not been so strong in his recommendation that he would have testified even though his prior federal trial testimony could have been used to impeach him.

The petitioner denied that trial counsel had explained the concept of sequestration to him or that it was possible to even ask for such. He stated that he now believed it would have been beneficial to his case had the jury been sequestered. The petitioner also testified that he and trial counsel never discussed the issue of hiring an investigator or challenging jurors. The petitioner testified that he was aware that a certain number of potential jurors could be struck without reason, but he claimed that trial counsel failed to consult with him when picking the jury. He did acknowledge that he did not request any specific juror be stricken from the panel.

After hearing the evidence presented, the post-conviction court took the matter under advisement and later issued a written order denying post-conviction relief.

**Analysis**

On appeal, the petitioner challenges the dismissal of his petition for post-conviction relief. Specifically, he contends that the dismissal was in error because trial counsel was ineffective by failing to request that the jury be sequestered, failing to utilize all the available peremptory challenges or to challenge jurors for cause, and failing to limit testimony concerning the prior federal trial.

In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed

by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## I. Request for Sequestration

First, the petitioner contends that trial counsel was ineffective for failing to request sequestration of the jury in light of the overwhelming publicity generated by the crime, as well as the prior federal trial. The law regarding this issue is that "[i]n all criminal prosecutions, except those in which a death sentence may be rendered, jurors shall only be sequestered at the sound discretion of the trial judge, which shall prohibit the jurors from separating at times when they are not engaged upon actual trial or deliberation of the case." T.C.A. § 40-18-116. Further, the Sixth Circuit has held that "the failure to sequester a jury standing alone could rarely, if ever, constitute reversible error. A defendant would have to demonstrate actual prejudice or at least substantial likelihood thereof flowing from the failure to sequester in order to warrant a new trial." *United States v. Johnson*, 584 F.2d 148, 155 (6th Cir. 1978).

In the memorandum in support of the order denying relief, the post-conviction court made the following findings:

> The Court understands the petitioner to try to prove that counsel was ineffective in not requesting sequestration of the jury. It is true that there was pre-trial publicity and, as an apparent result, almost half of the potential jurors were aware of the petitioner's case or, at least, the offenses. Considering, however, counsel's satisfaction with the jury after exhaustive, individual *voir*

-7-

*dire*, the lack of evidence of any outside influence on the jury, and the possibility that a sequestered jury may be more likely than a non-sequestered jury to rush deliberations in eagerness to go home, the Court finds no deficiency in counsel's performance in this respect.

After review, we conclude that nothing in the record preponderates against the post-conviction court's findings. As noted by the State, there was little proof presented at the post-conviction hearing on this issue. Trial counsel testified that he and the petitioner discussed the issue of sequestration, but, after consideration, he did not believe it would be beneficial to the petitioner's case. He noted that he saw no evidence of any outside influence on the jury and noted that, had he seen such, he would have acted accordingly. The petitioner merely testified that he was not aware that he could ask for sequestration, that he and trial counsel did not discuss it, and that he now believed the request should have been made.

We also note the following colloquy from the trial transcript:

[Trial Counsel]:     Your Honor, one matter more. I've spoken at length with [the petitioner] about sequestration of the jury and we have determined that that is not necessary.
I was looking through the update to the rules regarding trial jurors, peremptory challenges. Judge, what I would ask you for, and I would so move - - it sets out what the admonition is, and I'm familiar with your standard one.
I would ask that it be as strong an admonition as possible. I believe we're going to have some individual voir dire to see if there are any problems with pre-trial publicity. So I think that's going to cure any problems. But whatever you say to them that's strong, I would like you to say.

The Court:     Of course, the Court is sort of concerned about the fact . . . that the defense has moved for a change of venue because of the excessive publicity.

[Trial Counsel]:     Yes, sir.

The Court:     And I don't know how that fits in with now saying that you're satisfied with the jury not being sequestered, because there will be - - if there's been excessive publicity before, I would think that there will be quite an

-8-

amount of publicity surrounding this case at this time.

[Trial Counsel]:        Well, Your Honor, that's - -

The Court:              Are you waiving your motion for change of venue?

[Trial Counsel]:        No, Your Honor, because again what we were going to do was put that over to see what sort of response we got from - - the publicity that's going to be detrimental to this [petitioner] and prejudicial to him has already come, and, as I pointed out the other day, it has not to do just with these events, but with - -

The Court:              I understand that.

[Trial Counsel]:        - - his conviction for these events.

The Court:              I understand that, but - -

[Trial Counsel]:        And I don't know that any more of it could be more prejudicial.

The Court:              Once this case starts though and the jury is selected, they are going to be - - I would think the press is going to be somewhat extensive in covering not only what's happened as far as these incidents, but as far as any other action that's been taken against [the petitioner]. And I can instruct the jury in that regard, but whether or not the jury is going to inadvertently see something, I don't know.

[Trial Counsel]:        Judge, I understand that. I guess what I'm asking for is - - and again, we've reasoned our way through this the best we can. And I believe any prejudicial matters - -

The Court:              All right.

[Trial Counsel]:        - - that are going to be before them have already been before them.

| | |
|---|---|
| The Court: | All right, I will - - of course, I will - - in light of that fact, I think it would be wise to select three alternate jurors. |
| [Trial Counsel]: | Very well. |
| The Court: | And I will heavily instruct them as far as avoiding any news coverage with reference to this case. And I will - - at the beginning of each day, I will question them to see if any of them have seen anything regarding this case. |
| [Trial Counsel]: | Your Honor, that will be satisfactory. |

The record further establishes that the jury was strongly admonished about avoiding possible exposure and was questioned upon their return to the courtroom each time.

From this, it is clear that trial counsel was aware of the issue and its possible effect on the jury. It was discussed and "reasoned," and the conclusion was reached that sequestration would not benefit the petitioner's defense. As found by the post-conviction court, it was a reasonable strategic decision made by trial counsel after adequate research and preparation. *See Adkins*, 911 S.W.2d at 347. Trial counsel reasoned that the publicity that would be generated by the trial would likely only be a repeat of that already generated by the crime and the prior federal trial. On these facts, the petitioner has failed to show that trial counsel's decision was unreasonable or deficient.

Moreover, the petitioner has failed to put forth any evidence which would establish that the jury was subject to any outside influence whatsoever in the case. Thus, he is precluded from establishing the prejudice prong of an ineffective assistance of counsel claim. Nothing in the record established that the result of the trial would have been different had the jury been sequestered. The petitioner is not entitled to relief on this issue.

## II. Exercise of Juror Challenges

Next, the petitioner contends that trial counsel was ineffective in that he failed to utilize all available peremptory challenges, as well as challenges for cause, to remove jurors who had extensive knowledge of the crime and the prior federal trial. He further alleges that trial counsel's failure to utilize these challenges "effectively negated any potential favorable ruling by an Appellate Court in the Court's denial of the Change of Venue Motion." The State responds that the petitioner has failed to show how trial counsel was deficient in this regard or how the exercise of additional challenges could have changed the result of the case. In addressing this issue, the post-conviction court stated:

The Court understands the petitioner to try to prove that counsel was ineffective in not using all his peremptory challenges, thereby prejudicing his appeal from the denial of his motion for a change of venue. Considering the exhaustiveness of the individual *voir dire* and counsel's satisfaction with the jury, the Court finds no deficiency in counsel's performance in this respect.

We agree.

The selection of a fair and impartial jury is left to the sound and wide discretion of the trial court. *State v. Bowers*, 77 S.W.3d 776, 783 (Tenn. Crim. App. 2001). Absent an abuse of that discretion prejudicing the defense, this court will not overturn the trial court's method of selection. *State v. Simon*, 635 S.W.2d 498, 506 (Tenn. 1982). Moreover, we know of no requirement that an attorney utilize all granted peremptory challenges. Rather, that is a strategic decision assigned to the attorney in order to ensure the best possible jury for his client.

There is no dispute in this case that there was a great deal of publicity generated by both the crime itself, as well as by the federal trial. Trial counsel filed a motion for a change of venue, to which he attached multiple articles involving the case. The decision on the motion was reserved until after individual, and very thorough, voir dire was conducted with the potential jurors who indicated they had some knowledge of the case. Trial counsel testified at the post-conviction hearing that, after the voir dire process, he was satisfied with the jury that had been selected. He testified that the decision was trial strategy and that, had he felt additional challenges would have benefitted his client, he would have exercised them. He further stated that he did not believe the use of additional challenges would have impacted the outcome the case.

Based upon this record, we conclude nothing has been presented which preponderates against the findings of the post-conviction court. We cannot conclude that trial counsel was deficient because he made a strategic decision not to exercise more challenges during the selection process.

Moreover, contrary to the petitioner's argument, the failure to utilize all challenges did not preclude review of or determine this issue on appeal. This court stated that in the petitioner's direct appeal:

[The petitioner] filed a motion for change of venue due to the pretrial publicity given the murder and the subsequent federal trial. At the hearing on the motion, [the petitioner] requested that the trial judge reserve the motion for change of venue until the day of trial, to see whether or not [the petitioner]

could get an untainted jury. During the voir dire, forty eight of the jurors, approximately half, indicated they had heard something about the murder, and they were then individually voir dired by the trial judge and attorneys concerning their knowledge of the case, and their ability to be fair. Only two jurors had to be excused because they indicated that they had followed the case, were familiar with the details, and had formed an opinion of [the petitioner's] guilt. Two jurors were also excused for other reasons, one because he knew the victims, and another because he had been a witness in a trial concerning his neighbor's murder. All the other jurors examined indicated that they remembered no details other than that a man had been killed during an attempted car theft, and all indicated that they could give [the petitioner] a fair trial. None of the jurors had any knowledge of [the petitioner's] federal trial or conviction. The trial judge therefore found that [the petitioner] could get a fair jury without a change of venue, and denied the motion. . . .

[The petitioner] has not established that his jury was tainted by the pre-trial publicity. . . . Here, the petitioner failed to demonstrate the kind of bias or prejudice that would have precluded a fair trial.

*Michael Deangelo Green*, No. 03C01-9610-CR-00379, 1998 Tenn. Crim. App. LEXIS 388, at *6-9. Review of the issue was not determined by the exercise, or lack thereof, of challenges to potential jurors. Additionally, the petitioner has proffered no evidence how the use of all the peremptory challenges, or challenges for cause, would have made a difference in the outcome of the case. The petitioner has failed to establish his entitlement to relief.

## III.  Evidence of the Petitioner's Federal Trial

The petitioner further contends that trial counsel was ineffective because he failed "to limit testimony concerning the Federal Trial concerning the same incident." The petitioner asserts that reference to the prior trial prejudiced the outcome of his case.

In denying relief on this issue, the post-conviction court found as follows:

The Court understands the petitioner to allege that counsel was ineffective in not requesting exclusion of evidence of the federal trial. Apparently, the only reference to the federal trial was during counsel's cross examination of Mr. Daniels about his prior, inconsistent testimony at the federal trial. Considering that, because the alibi defense in the federal trial was completely unsuccessful and there was no apparent reason to anticipate any

-12-

more success with the same defense in the state trial, the petitioner did not have much alternative to impeaching prosecution witnesses, especially Mr. Daniels, whose descriptions of the petitioner's role as leader and actions were important, the Court finds no deficiency in counsel's performance in this respect.

Again, nothing in the record preponderates against the post-conviction court's findings. Trial counsel was aware of the evidence in the case from both his own investigation and the evidence presented in the federal trial. He testified at the hearing that he gained information from the federal trial which was useful to him at trial for impeachment purposes. Clearly, trial counsel made the strategic decision that the benefits from utilizing the information, from the federal trial outweighed the danger of prejudicing the jury. That does not equate to deficient performance, and the petitioner is entitled to no relief.

In summary, the petitioner has wholly failed to establish that trial counsel's strategic decisions in this case constituted deficient performance. As previously noted, the petitioner is not entitled to the benefit of hindsight to challenge decisions made by trial counsel during the representation, even if they result in a non-desired outcome. *See Adkins*, 911 S.W.2d at 347. Moreover, the petitioner has failed to put forth any evidence, other that his own testimony, to establish his claims. As pointed out by the State, the failure to present evidence to support the claims at the post-conviction hearing most often precludes relief. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The dismissal of the petition was proper.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-13-