IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 8, 2017 Session

**STATE OF TENNESSEE v. SUSAN JO WALLS**

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Bedford County**
**No. 17626     Forest A. Durard, Jr., Circuit Judge**

_____

**No. M2014-01972-SC-R11-CD**
_____

We granted this appeal by the State of Tennessee to consider whether the trial court erred by allowing the jury in this case to deliberate late into the night and early morning on the last day of trial before convicting the defendant of first degree murder and conspiracy to commit first degree murder.  The Court of Criminal Appeals granted the defendant relief on this issue, reasoning that absent a showing of unusual circumstances, late-night trial proceedings should be avoided and that such circumstances were not presented in this case.  We accepted this appeal to examine this issue and clarify the applicable standard of review on appeal.  Following our review, we conclude that the Court of Criminal Appeals erred in concluding that the trial court's conducting late-night trial proceedings requires reversal of the defendant's convictions.  Accordingly, the Court of Criminal Appeals is reversed and the judgments of the trial court are affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal**
**Appeals Reversed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, and HOLLY KIRBY, JJ., joined.  SHARON G. LEE, J., filed a separate concurring opinion.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Andrew C. Coulam, Assistant Attorney General; Robert J. Carter, District Attorney General; and Richard A. Cawley and Michael D. Randles, Assistant District Attorneys General, for the appellant, State of Tennessee.

Christopher P. Westmoreland, Shelbyville, Tennessee, for the defendant, Susan Jo Walls.

**OPINION**

## I.  INTRODUCTION

The trial of this matter began on Monday, May 5, 2014.  The trial continued through the week until Thursday afternoon, May 8.  After closing arguments, the trial court stood in recess for approximately two hours when the defendant suffered a medical emergency.  When the proceedings resumed, the trial court instructed the jury around 6:30 p.m., and the jury retired to deliberate.  As detailed below, multiple interactions occurred among the trial judge, the attorneys, and the jury during this time.  The jury returned a verdict at 1:05 a.m. the following morning.  The Court of Criminal Appeals granted the defendant relief on the issue of late-night court proceedings, *State v. Walls*, No. M2014-01972-CCA-R3-CD, 2016 WL 1409836, at *13-14 (Tenn. Crim. App. Apr. 7, 2016), *perm. app. granted* (Tenn. Aug. 18, 2016), and the State filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal, arguing that the Court of Criminal Appeals erred in its ruling.  We granted the application to consider whether, *inter alia*, the trial court erred in permitting the jury to deliberate into the late night and early morning hours.

## II.  FACTS AND PROCEDURAL HISTORY

On August 8, 2012, Bedford County Sheriff's Deputy Tim Fox responded to a report of a theft on Enon Church Road in Bedford County.  Upon his arrival, he encountered the defendant, Susan Walls, and her daughter Dawn Walls standing at the mailbox.  There, he learned that the victim, Larry Walls, Sr., was inside the residence, deceased.  Deputy Fox performed a cursory check of the residence and observed the victim on the floor of a bedroom.  He described the scene as "pretty gruesome."  Blood was on the walls, the floor, and the furniture around the victim.

Tennessee Bureau of Investigation ("TBI") Special Agent Caleb Utterback also responded to the scene in Bedford County pursuant to a request from the Bedford County District Attorney for the TBI to handle the investigation.  Based upon his experience, he thought that the crime scene appeared "staged."  Special Agent Utterback listened to the recording of the 9-1-1 call in his vehicle.  The defendant had placed the call, but Dawn[1] had to finish the call because the dispatcher could not understand the defendant.  He agreed that the recording struck him as "odd."  The call had been dispatched as a theft; neither the defendant nor Dawn conveyed any information about a deceased person at the

---

[1]  Several of the female witnesses in this case share the surname of "Walls."  For that reason, we will refer to the witnesses by their given names to avoid confusion.  By doing so, we intend no disrespect.

residence.  Also, Dawn gave her alibi for the day to the dispatcher, which presented a "huge red flag" to Special Agent Utterback.

During the TBI's investigation, they discovered that the victim's death had been the result of a murder-for-hire.  Several witnesses, including Dawn, her sisters Aelisa Stacy and Melissa Walls, her brother Larry Walls, Jr., and others, described the victim as having been an "evil man" who had been extremely physically abusive to both the defendant and their children and sexually abusive to Dawn. Over the years, many of the victim's family members had commented offhandedly that they wished he were dead but never to the point of plotting his death.

During Memorial Day Weekend 2012, the victim and the defendant traveled to Antioch, a suburb of Nashville, to spend the night at Dawn's apartment.  Dawn shared the apartment with her boyfriend, Derrick McClain; her roommate, Chrissy Twilley; and Ms. Twilley's boyfriend, Jason Starrick.  During the weekend, Dawn, the defendant, and Mr. Starrick discussed how much money killing the victim would cost and various methods that could be employed.

In mid-July, the defendant visited her daughter Aelisa at the residence of Aelisa's boyfriend, Joseph Williams.  The defendant had puffy eyes as though she had been crying, and it appeared to Mr. Williams that someone had struck her.  The defendant told Mr. Williams that the victim had hit her, that "she was tired of it," and that it "was the last time he was ever going to hit her."  The defendant remarked that "she had it taken care of and that she had some guys that was [sic] going to come down and slit his throat."

Approximately one week later, Dawn spoke with Mr. Starrick again and discussed his "tak[ing] care of [the victim]" for $400.[2]  The defendant acquiesced and told Dawn that she would pay half of the sum.  A plan was formulated for Dawn and the defendant to take Aelisa and her four children to a Chuck E. Cheese's restaurant to provide an opportunity for Mr. Starrick to kill the victim at his home.  The plan was discussed five or six times before it was executed.

On the night before the murder, August 7, 2012, several people were present at the home of the victim and the defendant.  Dawn and the defendant had a discussion about why everyone was there.  They said that the murder would occur the following day,

---

[2]  Several witnesses at trial, including a representative from Verizon Wireless and a TBI agent who specialized in computer and cellular telephone forensics, discussed the content and frequency of various telephone calls and text messages that were exchanged among the defendant, Dawn, Jason Starrick, and Aelisa (the defendant purportedly used Aelisa's telephone periodically when her personal telephone was out of order).  Many of these communications involved logistics, price negotiations, and methods of committing the murder.

August 8.  At some point, Dawn informed Mr. Starrick that the back door of the residence was always unlocked.  Dawn indicated that she wanted to take Aelisa's son to Chuck E. Cheese's because the school year would begin soon.  That night, Dawn, Aelisa, Ms. Twilley, Mr. Starrick, Sean Gerheardt, and Aelisa's four children drove in two cars to Dawn's apartment in Antioch to spend the night.  Everyone except Mr. Gerheardt spent the night there.  Dawn paid Mr. Starrick $70 in cash and also provided him with a debit card and personal identification number so that he could purchase the necessary items to carry out the murder.  The defendant did not contribute any money to Mr. Starrick.

The following morning, Mr. Gerheardt returned to the apartment, and he and Mr. Starrick left the apartment around 6:15 a.m.  They used Dawn's debit card that morning at a Mapco gas station and at Walmart, where they purchased ammonia and two sets of rubber gloves.   The defendant arrived at Dawn's apartment around 10:00 a.m.  Mr. Gerheardt and Mr. Starrick returned thereafter; they were wearing black clothes, and Mr. Gerheardt had some blood on him.  Mr. Starrick removed a long-sleeve shirt that was wet.  When the two men entered the apartment, Ms. Twilley observed "tissue or matter" on the side of Mr. Starrick's face and a bloody fingerprint on Mr. Gerheardt.  They entered a bathroom, cleaned up, and exited with a plastic garbage bag.  Mr. Starrick returned Dawn's debit card, and she drove to Mapco to obtain money from the teller machine to spend at Chuck E. Cheese's.  When she returned from Mapco, Mr. Gerheardt and Mr. Starrick were in the parking lot placing a black trash bag into Mr. Starrick's truck.  They told Dawn that "it was done."  Later that day, the defendant, Dawn, Aelisa, and the children drove to Shelbyville.

When they arrived in Shelbyville, Dawn and the defendant took Aelisa and her children to Melissa's house.  They had planned this in advance because the defendant did not want Aelisa and her children to see the victim or the crime scene.  Dawn and the defendant went to get ice cream for all of the children from the defendant's house.  When their trip took longer than expected, Aelisa called to see why they were delayed.  The defendant told Aelisa what had happened to the victim.

Although the defendant and Dawn initially gave statements in which they disclaimed any involvement, they both subsequently provided statements in which they accepted responsibility and explained the events leading up to and surrounding the victim's murder.  In addition to the confessions, the State's evidence at trial included forensic evidence, which matched the victim's blood with blood found on Mr. Starrick's long-sleeve shirt that was recovered from the apartment and with blood found on the belt Mr. Starrick was wearing when he was arrested.  The medical examiner opined that the victim died by "multiple modality," any of which were potentially fatal and all of which contributed to his death:  blunt force trauma to the head, and stab wounds to the heart, lung, and liver.  Jason Starrick and Sean Gerheardt were located, with the assistance of

Ms. Twilley, and arrested; the defendant and Dawn were arrested and charged with criminal responsibility for the first-degree premeditated murder of the victim and conspiring with each other, Mr. Starrick, and Mr. Gerheardt to commit said murder. The defendant was found guilty and was sentenced to concurrent terms of life in prison and twenty-one years, respectively.

The defendant appealed her conviction and sentence on several grounds. *Walls*, 2016 WL 1409836, at *1. In the Court of Criminal Appeals, the defendant argued, *inter alia*, that the evidence was insufficient to support her convictions, that the trial court erred by allowing the jury to deliberate late into the night, and that the trial court erred in several other rulings. *Id.* The Court of Criminal Appeals reversed the defendant's convictions based on the late-night jury deliberations but affirmed the convictions on all other grounds. *Id.*

In this Court, the State filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal, arguing that the intermediate appellate court erred in reversing the defendant's convictions based on the jury's late-night deliberations. We granted the application to consider whether "a trial court's decision to extend jury-trial proceedings into the late-night hours [is] reviewed for abuse of discretion or . . . de novo without a presumption of correctness" and whether "[a]bsent evidence of attorney or juror fatigue, . . . the trial court violate[s] the defendant's constitutional rights to due process and a fair trial by permitting the jury to continue its deliberations late into the night." To decide this issue, we must first consider whether the defendant properly preserved the issue in the absence of a definitive ruling by the trial court and a failure to renew the motion during the course of the late night proceedings.

## III.   ANALYSIS

This matter requires us to review the proceedings that were conducted in the trial court contemporaneously with the late-night proceedings as well as what transpired during the hearing on the motion for a new trial.

At 4:04 p.m. on May 8, 2014, the defendant began experiencing health problems. A paramedic was summoned, and he indicated that the defendant's blood pressure was 210/120, which he described as "[v]ery high, stroke high." A deputy suggested that they should transport the defendant to a hospital, and the paramedic agreed. After the defendant's removal from the courtroom, the trial court mentioned instructing the jury in her absence, and defense counsel thereupon objected to "any further action without [his] client here." The State suggested that they "just wait a little while and see if her blood pressure comes back down and then proceed." Thereafter, the following conversation occurred on the record:

DEFENSE COUNSEL: I think . . . the General may be correct there. And based on my experience, I've never been in the hospital where it took twenty or thirty minutes for a turn around, especially not when your blood pressure is that high. They always want to make sure that whatever they've administered that you don't drop too low and that kind of thing. So if it's going to be two hours, which sounds like a long time, two hours. Especially, then to come back in after two hours, if she's even here, we're going to have another thirty, forty minutes based on what we expect the charge to be and then they're going to start deliberating at seven o'clock at night?

THE COURT: Yeah, it's going to take me thirty, forty-five minutes to read this charge.

DEFENSE COUNSEL: It sounds to me, based on where we are, is that the best thing to do would be to adjourn until tomorrow and start fresh in the morning. I don't have a problem dismissing the juror that needs to go to Knoxville. I have no problem at all.

No further discussion ensued. The defendant returned from the hospital, and with her present, the trial court instructed the jury beginning at 6:30 p.m. The jury began deliberating at 7:13 p.m. The jury sent a question to the trial court at 10:41 p.m. The trial court and attorneys were still discussing the appropriate answer when the jury sent word that they were hungry and wanted something to eat. The clerk ordered pizza for the jury, and at 11:13 p.m., the trial court sent the answer to the jury's question. The jury continued its deliberations and returned verdicts of guilty at 1:05 a.m. the following morning.

Defense counsel raised the late-night jury deliberations in his motion for a new trial. The following discussion ensued at the hearing:

DEFENSE COUNSEL: The time that the – there was a delay in time at the – between the closing arguments and the reading of the charge to the jury that was because of a medical emergency. You remember the medical emergency regarding my client, where she was taken to the hospital.

When the jury was brought back in prior to, they had been out for some two hours. And then went till 1:30 in the morning, I think is what we did that day.

- 6 -

THE COURT:          It was like 1:05 a.m.

DEFENSE COUNSEL:    A very long time.  But one of the jurors, when she came back in, exhibited fatigue.  Said she'd had a nice nap back there. And I'm not saying that she was elderly, but she was a little bit.

And in the grand scheme of things, I don't know that any of the jurors were prepared for the length of deliberation[s] that occurred.

We argued for a motion to continue the case until, you know, a later time until Monday or even until Saturday, I think because we were on a Friday at that point, or maybe that was a Thursday and we had Friday available to us.  That was what it was, it was Thursday night until Friday morning.

And I had argued to continue the case, and you rejected that. And we believe that that would be – juror fatigue, at that point, is one of the grounds that we think we should have a new trial because they were not prepared for the length of stay that they had that night.

THE COURT:          Let's go ahead and address that.  My recollection of those events, [COUNSEL], was that the jurors wanted to proceed on.

And I guess I may have preempted the General.

Do you want to go ahead and respond to that?

THE STATE:          That's my recollection, the court gave them the option.

THE COURT:          And they wanted to proceed on.

Now, it might have been problematic had this juror been napping during the proof, but she went back there and rested during the period of time that –

Did this occur when [the defendant] was taken over to the hospital?

- 7 -

DEFENSE COUNSEL:   Yes, Your Honor. It was after she was brought back in that this juror came in and mentioned having a nice nap during that break.

THE COURT:   I don't recall that being said, anything maybe other than in jest.

I mean, as a matter of fact I do believe I asked them, did they wish to proceed. And they wanted to plow through. Because my recollection of the events, they went out about 7 p.m. to deliberate, and came back very slightly after 1 o'clock.

I mean, without more, I'm not – based on my examination of the jurors of them wanting to proceed forward, I can't imagine this had any bearing on her ability to reach a verdict in this case.

After reviewing the trial court proceedings, it is clear that our determination of this issue must address whether defense counsel properly preserved his "motion" to adjourn the proceedings at the close of the day on Thursday, May 8. If we conclude that he did not preserve the issue, we must further determine whether the issue is deemed waived or whether this Court should exercise its jurisdiction to review the issue on the merits pursuant to plain error review.

## A.   WAIVER/JURISDICTION OF THE COURT

We must first determine whether the Court of Criminal Appeals had jurisdiction to consider the defendant's claim of error regarding the jury deliberations. This necessarily involves two inquiries: (1) did the Court of Criminal Appeals properly consider counsel's interjection at trial as a contemporaneous objection, thereby preserving appellate review of the issue; and (2) if not, could the Court of Criminal Appeals have properly applied plain error review to grant the defendant relief on this claim of error.

The Court of Criminal Appeals concluded that the defendant had preserved this issue for review. *Walls*, 2016 WL 1409836, at *12. This Court has held, albeit in a different context, that in cases "where the record on a pretrial suppression motion or on a motion *in limine* clearly presents an evidentiary question and where the trial judge has clearly and definitively ruled," defense counsel need not offer further objections to the trial court's ruling. *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1988). We cautioned, however, that in cases in which the "issues are only tentatively suggested or the record only partially and incompletely developed[,] . . . [c]ounsel necessarily take some

- 8 -

calculated risks in not renewing objections." *Id.*; *see also State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001). This general principle is demonstrated in this case.

Moreover, this Court has further recognized the importance of a contemporaneous objection to *procedures* utilized by the trial court in addition to evidentiary issues. In *State v. Estes*, this Court reiterated, "Objections to improper *procedure* must be voiced contemporaneously to give the trial judge the opportunity to correct the error on the spot. In the absence of a contemporaneous objection, any error was waived." 655 S.W.2d 179, 186 (Tenn. 1983) (emphasis added) (citing Tenn. R. App. P. 36); *see also State v. Smith*, 857 S.W.2d 1, 20 (Tenn. 1993) ("Defendant failed to raise any objection to the procedure employed by the trial judge until after the case had been submitted to the jury. This failure to take action constitutes a waiver to the procedure employed, which we find to be constitutionally sound."); *State v. Skelton*, 77 S.W.3d 791, 799 (Tenn. Crim. App. 2001) (citation omitted) (noting that a defendant may be considered to have acquiesced in action taken by the trial court if he stands silent and that "[t]his rule prohibits a party from standing silent while the trial court commits an error in procedure, and then rely[ing] on that error to his or her own advantage at a later time"); *State v. Mahoney*, 874 S.W.2d 627, 629 (Tenn. Crim. App. 1993) (citations omitted) (concluding that defendant waived issue of whether trial court erred in not requiring his presence when jury returned with a question by failing to take "action to prevent the occurrence of the alleged error" and that "[u]nless the defendant makes a contemporaneous objection under these circumstances, the issue is waived").

Although this issue necessarily implicates the defendant's right to a trial by jury, it does so in a manner in which the procedure utilized by the trial court – late-night jury proceedings – is called into question. The procedural decision by the trial court to permit the jury to deliberate late into the night required a contemporaneous objection by counsel so that the trial court had an opportunity to address and/or correct the issue immediately. As noted *supra*, defense counsel stated his opinion during an on-the-record discussion with the trial court and the State that "based on where we are, . . . the best thing to do would be to adjourn until tomorrow and start fresh in the morning." Counsel did not make a formal motion, nor did he offer further argument in support of his opinion.[3] We further note that counsel did not seek and that the trial court did not offer a clear and definitive ruling against the defense at that time; counsel did not offer further argument or objection to continuing the proceedings when the jury was again convened in the courtroom, before or after the trial court's instructions to the jury, before or after the trial court answered the jury's question, or when the jury requested dinner. The discussion concerning whether to adjourn for the day occurred around 4:15 p.m., but counsel did not address the issue again until the hearing on the motion for a new trial. The repeated

---

[3] It is noteworthy that during oral argument to this Court, defense counsel conceded that his statement to the trial court was *not* a motion to continue the proceedings until the following day.

- 9 -

opportunities to revisit counsel's "suggestion" and his silence during those opportunities support a finding of waiver of this issue. *See, e.g., State v. Mack*, 435 So. 2d 557, 565 (La. Ct. App. 1983) ("It should be noted, however, the defense counsel did not make a motion to recess at any time on this date. Accordingly, defendant cannot now complain that the length of trial was unduly long."); *State v. Schreiner*, 754 N.W.2d 742, 762-63 (Neb. 2008) (holding that "[o]ne cannot know of purportedly improper judicial conduct, gamble on a favorable result as to that conduct, and then complain that he or she guessed wrong and does not like the outcome"); *Garza v. State*, 783 S.W.2d 796, 798 (Tex. Ct. App. 1990) (citations omitted) (holding that failure to object to the hour of trial waives a claim of error and noting that "[s]pecifically, a claim that the trial court's action had a coercive effect on the jury is waived by failure to object"). This should not be read to imply that trial courts should require counsel to use talismanic language such as "move" or "motion" for their arguments to be preserved on appeal. Rather, we reiterate that a mere "tentative[] suggest[ion]" coupled with an "incompletely developed" record poses great risk of waiver on appeal. *McGhee*, 746 S.W.2d at 462.

We also recognize that at the hearing on the motion for a new trial, counsel alleged that one juror whom he described as "elderly" exhibited fatigue during the evening and night.[4] However, counsel did not bring this alleged fatigue to the court's attention during the trial and did not present this juror as a witness at the hearing to testify as to her degree of fatigue, if any. Taken together, we conclude that defense counsel failed to object to the late-night jury proceedings and consequently, has waived review of this issue. The contrary conclusion reached by the Court of Criminal Appeals is hereby reversed.

## 2. Plain Error Review

Even if the Court of Criminal Appeals had concluded that the defendant waived the issue for review, it could have nonetheless considered whether a plain error analysis was applicable under the facts to examine whether any error occurred. Appellate courts in Tennessee have "the authority to 'consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.'" *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2015) (quoting Tenn. R. App. P. 36(b)). "We refer to this discretionary consideration of waived issues as 'plain error' review." *Knowles*, 470 S.W.3d at 423; *see also Grindstaff v. State*, 297 S.W.3d 208, 219 n.12 (Tenn. 2009). "Plain error" review is also available when counsel fails to lodge a contemporaneous objection when the issue first arises. *State v. Thomas*, 158 S.W.3d 361, app. 413 (Tenn. 2005). "To rise to the level of plain error, [a]n error would have to [be] especially egregious in nature, striking at the very

---

[4] As previously referenced in this opinion, defense counsel alleged that after the two-hour recess, a juror made a comment that she had taken a "nice nap" during that time. The defense relied upon this comment to infer juror fatigue.

- 10 -

heart of the fairness of the judicial proceeding." *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (alterations in original) (internal quotation marks omitted) (quoting *State v. Banks*, 271 S.W.3d 90, 127 (Tenn. 2008)).

> In Tennessee, an appellate court will grant relief for plain error only if
>
> (a)  the record clearly establishes what occurred in the trial court;
> (b)  a clear and unequivocal rule of law has been breached;
> (c)  a substantial right of the accused has been adversely affected;
> (d)  the accused did not waive the issue for tactical reasons; and
> (e)  consideration of the error is "necessary to do substantial justice."

*Martin*, 505 S.W.3d at 504 (citations omitted). "'[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established.'" *Id.* (citations omitted). "'If any one of these factors is not satisfied, we need not consider the remaining factors.'" *Id.* at 505 (citations omitted). "'When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial.'" *Id.* (citations omitted); *see also State v. Willis*, 496 S.W.3d 653, 707 (Tenn. 2016) (citations omitted) (noting that the defendant bears the burden of persuading an appellate court that plain error exists).

Before examining whether plain error exists, we begin with the premise that it is incumbent upon the defendant in this case to persuade an appellate court that plain error occurred that was sufficient to change the outcome of the trial. The defendant did not assert plain error as a basis for review in her brief, nor did she argue before this Court that plain error should operate to grant her relief. Nonetheless, our review of the record leads us to the conclusion that plain error is inapplicable in this case.

Notably, at least one of the five requisite factors is missing from this case. There is a lack of clear and unequivocal law on this subject.[5] Even the standard of review to be

---

[5] In this case, we are not called upon to decide whether the rule announced in *Henderson v. United States*, 568 U.S. 266 (2013), applies in Tennessee, because the law at issue in this case was unclear at both the time of trial and the time of appeal. The United States Supreme Court held in *Henderson* that an error is "plain" within the meaning of the federal plain error rule, Fed. R. Crim. P. 52(b), as long as the error was plain at the time of appellate review, even if the error was not plain at the time of trial. *Henderson*, 568 U.S. at 279 (concluding "that whether a legal question was settled or unsettled at the time of trial, 'it is enough that an error be 'plain' at the time of appellate consideration'") (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

applied in circumstances such as this is unsettled. The State urges us to review for abuse of discretion, *see infra*, while the defense argues that we should presume a constitutional due process violation. Some cases indicate that late-night proceedings should only be conducted under unusual circumstances, *see infra*, while other cases favor allowing the trial court discretion to direct the proceedings in the courtroom, *see infra*.

As noted *supra*, the standard of review to be utilized by appellate courts when ascertaining the propriety of late-night court proceedings is unclear. The State urges us to recognize a trial court's inherent discretion to direct the manner of proceedings in the courtroom and thus apply an abuse of discretion standard. *See State v. Reid* ("Reid I"), 91 S.W.3d 247, app. 301 (Tenn. 2002); *State v. Poe*, 755 S.W.2d 41, 47 (Tenn. 1988); *State v. Simon*, 635 S.W.2d 498, 505 (Tenn. 1982). Although the defendant did not cite a standard of review in her brief, she adopted the reasoning of the Court of Criminal Appeals and further argued to this Court that we should presume a constitutional due process violation that the State should rebut. The Court of Criminal Appeals, in its opinion, stated that a finding of "unusual circumstances," coupled with the agreement of all parties and jurors, should be necessary before late-night court sessions are conducted. *Walls*, 2016 WL 1409836, at *13-14; *see also State v. Parton*, 817 S.W.2d 28, 33-34 (Tenn. Crim. App. 1991); *State v. McMullin*, 801 S.W. 2d 826, 832 (Tenn. Crim. App. 1990); *Hembree v. State*, 546 S.W.2d 235, 242-43 (Tenn. Crim. App. 1976).

The Court of Criminal Appeals relied upon *Hembree*, 546 S.W.2d at 242-43, as the "leading case" on this issue. *Walls*, 2016 WL 1409836, at *12. In *Hembree*, defense counsel addressed the trial court at midnight and stated that they could no longer render effective assistance because they were not "thinking clearly." *Hembree,* 546 S.W.2d at 242. The court proceeded with the trial despite these assertions from counsel. *Id.* Reasoning that "[t]he last hour of a trial is an essential portion thereof," the *Hembree* court reversed Hembree's conviction. *Id.* at 242-43. The *Hembree* court went further and opined that "absent unusual and compelling circumstances, the jury should not be permitted to listen to evidence until 1:00 a.m." *Id.*

By way of contrast, both parties in this case had rested their cases and the proof had been concluded when the defendant's medical issue arose. Defense counsel in the instant case made a suggestion that because the defendant's trip to the hospital could be protracted, it would be better to resume again the following morning. He made that statement around the four o'clock hour in the afternoon. He did not raise the issue again. He did not request an adjournment due to counsel fatigue or indicate that he could no longer perform effectively. In fact, during the ensuing hours of jury instruction, deliberation, jury question, and refreshment break, counsel did not raise the issue again or allege fatigue. Moreover, the Court of Criminal Appeals did not apply the "abuse of discretion" standard of review in this case when it concluded that the trial court erred by

allowing the jury to listen to evidence into the late hours of the night. *Walls*, 2016 WL 1409836, at *14. This case is factually and procedurally distinguishable from *Hembree*.

Relying on *Hembree*, the Court of Criminal Appeals in a subsequent case "subscribe[d] to [the] validity" of the rule set forth therein that absent a compelling reason, the court schedule should not have been as rigorous as it was. *McMullin*, 801 S.W.2d at 827. Although the trial court cited as unusual circumstances the facts that the jury was sequestered, the jury was comprised of twelve women, and the trial judge had an airplane reservation the following day, the appellate court nonetheless found those reasons unpersuasive in this context. *Id.* at 829-30. However, of notable exception is that in *McMullin*, counsel interposed an objection at 10:30 p.m. on the first night of trial, asking the court to be in recess until 9:00 a.m. the next morning. *Id.* at 827-28. The trial court overruled the objection and continued until 11:45 p.m. *Id.* at 828. At 6:10 p.m. on the second day of trial, counsel asserted that he was "fatigued" from the late night before and that his "degree of fatigue will be prejudicial" to the defense. *Id.* Proceedings continued until the jury received the case at 9:28 p.m., and it returned a verdict at 11:38 p.m. *Id.* at 828-29.

*McMullin* is factually and procedurally distinguishable from the case *sub judice*. Counsel lodged not one, but two, objections to the lateness of the hour on two separate nights. *Id.* at 831. The trial court held late sessions two nights in a row. *Id.* Defense counsel also asserted the very valid reason that he was fatigued and that he felt that his fatigue would prejudice his client. While the *McMullin* court recognized that "both the federal and state constitutions bridle the power of a trial judge in the exercise of his or her discretion in setting after-hours court sessions in criminal cases tried before a jury," *id.* at 832, it nonetheless did not review the trial court's decision in that case for abuse of discretion. For those reasons, *McMullin* is not instructive in this case.

Neither is the *Parton* case cited by the Court of Criminal Appeals instructive on this issue. 817 S.W.2d at 31. In *Parton*, the criminal trial began and concluded on the same day. *Id.* Jury selection lasted approximately two to three hours, then the trial court heard substantive motions before the proof began. *Id.* The trial court indicated early in the day that it intended to finish the case that same day because of a conflict with the use of the courtrooms the following day. *Id.* at 33. The State called eight witnesses in its case in chief. *Id.* at 31. Each witness was then subjected to cross-examination by three attorneys, each representing a co-defendant, and redirect by the State. *Id.* at 32. The defense collectively called five witnesses. *Id.* at 31. The trial court took two recesses and a dinner break. *Id.* The jury received the case for deliberation at 11:45 p.m. and returned the verdict at 2:15 a.m. the following morning. *Id.*

No objection was made to the lateness of the hour. Rather, the Court of Criminal Appeals noted that defense counsel "obliquely" commented on the point, saying, "The

other thing I wanted to do is get a little direction on what the Court wanted to do. I just wanted to mention that the jury's been working a long time. I didn't know what the Court wanted to do." *Id.* at 32. After the jury returned with a verdict of guilty, counsel raised the issue for the first time in his motion for judgment of acquittal or, in the alternative, a motion for a new trial. *Id.* Nonetheless, the *Parton* court concluded:

> We are unable in this case to say that appellant has waived his right to present this issue on appeal by not timely and expressly objecting at trial. Such a disposition would lead to an unfair result. We hold that plain error existed in the trial court's conducting the trial into the late night of April 5th and early morning hours of April 6, 1990. Appellant's contention as to this issue is meritorious, and a new trial must be ordered.

*Id.* at 35 (citations omitted). The court reasoned, "Regardless of whether counsel or any juror objects, the late night sessions should be avoided; and they must be justified because of unusual circumstances . . . . [T]he threshold question which must always be determined by the court is whether the circumstances justify the unusual session." *Id.* at 33-34.

While we note that the lateness of the trial in that case was not justified by the conflict in scheduling courtrooms, *Parton* was decided before this Court adopted the five-prong test for determining whether an error at trial rose to the level of plain error and therefore utilized prior precedent. *See State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). In 1991, when *Parton* was decided, the plain error analysis was based on "the facts and circumstances of the particular case." *State v. Ogle*, 666 S.W.2d 58, 61 (Tenn. 1984). General "unfairness," without more, will not suffice to excuse waiver pursuant to plain error review after *Smith*. We are not confident that the same result would have been reached had the current plain error analysis been applied. In the *Parton* case, we again note that the Court of Criminal Appeals did not review the issue under the "abuse of discretion" standard but rather relied upon "plain error" to grant the defendant relief.

Intermediate appellate courts must follow the law; a "court[] of last resort . . . is not inexorably bound by its own precedents but will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous . . . ." *Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016), (citations omitted), *cert. denied*, 137 S. Ct. 2163 (2017). In several cases, this Court has cited "abuse of discretion" as the applicable standard of review to be applied to this issue. *See State v. Reid* ("*Reid II*"), 213 S.W.3d 792, app. 826 (Tenn. 2006); *Reid I*, 91 S.W.3d at app. 301; *Poe*, 755 S.W.2d at 47; *Simon*, 635 S.W.2d at 505. However, this Court has never expressly required a showing of unusual circumstances before late-night sessions can be

held.[6]  There is a lack of a clear and unequivocal rule of law concerning late night court proceedings; accordingly, no such rule could have been breached in this case, thus plain error review cannot be applied herein to grant the defendant relief.

To settle this area of law,[7] we now conclude that the correct legal standard for reviewing whether a trial court errs in conducting late-night proceedings is abuse of discretion.[8]  "A trial court abuses its discretion when it applies an incorrect legal

---

[6]  It should be noted that in both *Reid I* and *Reid II*, this Court adopted the conclusion of the Court of Criminal Appeals in the appendices.  The Court of Criminal Appeals correctly applied the abuse of discretion standard; however, it cited *Hembree* and *McMullin*, thereby implicitly approving the requirement of unusual circumstances.  *Walls*, 2016 WL 1409836, at *13.

[7]  Although our decision regarding the appropriate standard of review is not technically necessary to resolve this appeal, our decision to address this issue is not inappropriate either.  Rule 11 of the Rules of Appellate Procedure sets forth several criteria for this Court to consider when reviewing an application for permission to appeal.  Tenn. R. App. P. 11.  One of these criteria allows this Court to grant permission to appeal if there is a "need for the exercise of the Supreme Court's supervisory authority."  Tenn. R. App. P. 11(a).  *See, e.g.*, *Bryant v. State*, 460 S.W.3d 513, 527 & n.9 (Tenn. 2015) (affirming the Court of Criminal Appeals' conclusion that the petitioner had failed to prove deficient performance of counsel in a post-conviction case but proceeding nonetheless to address the prejudice prong "to secure uniformity of decision" among panels of the appellate court with regard to the necessity of jury instructions on lesser-included offenses), *overruled by v. Moore v. State*, 485 S.W.3d 411 (Tenn. 2016); *State v. Burgins*, 464 S.W.3d 298, 302-03, 307-12 (Tenn. 2015) (granting permission to appeal to secure uniformity of decision and "to establish the procedure to be followed in bail revocation proceedings").  Clarifying the proper standard of appellate review that applies to a trial court's decision to allow or require late night jury deliberations is an appropriate exercise of our supervisory authority, as clarification of this point, even in dicta, will provide guidance to defense lawyers, prosecutors, trial judges, and members of the Court of Criminal Appeals.  *Holder v. Tennessee Judicial Selection Comm'n*, 937 S.W.2d 877, 882 (Tenn. 1996) ("[I]inferior courts are not free to disregard, on the basis that the statement is *obiter dictum*, the pronouncement of a superior court when it speaks directly on the matter before it, particularly when the superior court seeks to give guidance to the bench and bar.  To do otherwise invites chaos into the system of justice.").  For these reasons, we disagree with Justice Lee's assertion that our decision to address this issue amounts to overreaching.

[8]  In determining that late-night court proceedings should be reviewed for abuse of discretion, we are aligned with decisions from other states that apply the same standard of review.  *See, e.g.*, *Pyles v. State*, 947 S.W.2d 754, 758 (Ark. 1997) (noting that "a trial court has great discretion in scheduling a trial"); *People v. Baird*, 66 P.3d 183, 195 (Colo. App. 2002) (applying abuse of discretion standard and rejecting argument that defendant was deprived of a fair trial when trial court allowed jury to deliberate past midnight to accommodate a juror's travel plans the following day); *Green v. State*, 951 So. 2d 962, 964 (Fl. Dist. Ct. App. 2007) ("Trial courts have discretion to resolve issues relating to the course and conduct of a criminal trial.  Whether a trial should be adjourned for the day or continued into the evening is a decision that falls within this general class of discretionary decisions." (citations omitted)); *Conway v. State*, 642 S.E.2d 673, 691 (Ga. 2007) ("A 'trial court retains the discretion to determine how late to hold court before recessing for the evening.'" (citation omitted)); *People v. Schuld*, 529 N.E.2d 800, 825 (Ill. App. Ct. 1988) ("A court is given considerable latitude in the orderly procedure of a trial, and the exercise of that discretion will not be disturbed unless a clear abuse is shown." (citation omitted)); *Mack*, 435 So.

standard, reaches a conclusion that is not logical, bases its decision on a clearly erroneous assessment of the evidence, or uses reasoning that causes an injustice to the complaining party." *State v. Davidson*, 509 S.W.3d 156, 193 (Tenn. 2016) (citing *State v. Davis*, 466 S.W.3d 49, 61 (Tenn. 2015)); *see also State v. Smith*, 492 S.W.3d 224, 243 (Tenn. 2016).

## CONCLUSION

We conclude that the defendant has waived appellate review of this issue and that plain error review is not applicable to grant her relief from her convictions. Accordingly, we reverse the judgments of the Court of Criminal Appeals. We further conclude that the appropriate standard of appellate review of late-night court proceedings is abuse of discretion. Costs of this appeal are taxed to the defendant, Susan Walls, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE

---

2d at 565 (stating that "matters pertaining to the conduct of trial are within the sound discretion of the trial court" (citation omitted)); *Hooker v. State*, 716 So. 2d 1104, 1113-14 (Miss. 1998) (finding no abuse of discretion when trial court allowed deliberations to begin at 6:45 p.m. and the jury returned verdict of guilty at 11:45 p.m., despite defendant's "request" to begin deliberations the following morning); *Schreiner*, 754 N.W.2d at 762-63 (holding that the trial court "certainly" did not abuse its discretion in overruling motion for a new trial that was predicated on grounds that had been waived during trial); *People v. Meekins*, 545 N.Y.S.2d 791, 791 (N.Y. App. Div. 1989) (reasoning that "the court did not improvidently exercise its discretion" by allowing the jury to commence deliberations at 8:30 p.m., by partially recharging the jury at 12:16 a.m., and by permitting it to continue until a verdict was reached at 1:04 a.m. because the court "acced[ed] to the jurors' wishes"); *Garza*, 783 S.W.2d at 798 (holding that the length of a trial day "rests within the sound discretion of the trial court; absent an abuse of that discretion no error is shown" (citation omitted)). Our review of other jurisdictions yielded no authority for the proposition that late-night court proceedings are presumptively unconstitutional.