IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 4, 2025 Session

**STATE OF TENNESSEE v. MICHAEL GREEN A/K/A MICHAEL
CHEAIRS**

**Appeal from the Circuit Court for Madison County
No. 22-936   Joseph T. Howell, Judge**

———————————————————

**No. W2024-00370-CCA-R3-CD**

———————————————————

MATTHEW J. WILSON, J., dissenting.

I respectfully disagree with the majority's conclusion that Defendant properly preserved his Confrontation Clause issue and that he is entitled to relief. I would conclude that Defendant's issue is waived, and Defendant is not entitled to plain error relief.

"Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018) (first citing Tenn. R. Crim. P. 51; and then Tenn. R. Evid. 103(a)-(b); and then Tenn. R. App. P. 3(e); 13(b), 27(a)(4), 36(a); and then citing *State v. Bledsoe*, 226 S.W.3d 349, 353-54 (Tenn. 2007)). "Issue-preservation requirements promote efficiency and judicial economy by 'enabl[ing] a trial court to avoid or rectify an error before a judgment becomes final' and 'fostering the expeditious avoidance or correction of errors before their full impact is realized.'" *State v. Bristol*, 654 S.W.3d 917, 926 (Tenn. 2022) (quoting *Minor*, 546 S.W.3d at 65; and then citing *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020)). "This obligation to preserve issues applies to constitutional issues as well as non-constitutional ones." *Vance*, 596 S.W.3d at 253 (citing *Minor*, 546 S.W.3d at 65; *see United States v. Olano*, 507 U.S. 725, 731 (1993)).

Issue preservation begins with "a timely and specific objection in the trial court either at or before trial." *State v. Reynolds*, 635 S.W.3d 893, 926 (Tenn. 2021) (first citing Tenn. R. Evid. 103(a); and then *Vance*, 596 S.W.3d at 253). An objection must state "the specific ground of objection if the specific ground was not apparent from the context[.]" Tenn. R. Evid. 103(a)(1). Timely objections "permit the judge to rule on the admissibility of the evidence before it is introduced to the jury" and "provide the proponent of the evidence with the opportunity to offer the evidence by an alternative, nonobjectionable

method." *State v. McDowell*, No. E2020-01641-CCA-R3-CD, 2022 WL 1115577, at *17 (Tenn. Crim. App. Apr. 14, 2022).

Here, Defendant stated to the trial court immediately after jury selection that he was facing a "quandary" because he understood "from the indictment and from the list of witnesses that Evelyn Stigler is the prosecutor of this case and the witness, but at trial here we have someone different." Defendant's initial argument appeared to be couched in terms of the State's failure to disclose a witness in accordance with Code section 40-17-106, and from the State's response at trial, the State also understood this to be Defendant's argument. Defendant requested a mistrial and a dismissal and argued "that's going to deprive [Defendant] of his right to confront and cross-examine his accusers." Defendant did not make any substantive arguments based on the Confrontation Clause, and he did not specify whether his objection was based on the state constitution, the federal constitution, or both. Defendant did not request the exclusion of any evidence or otherwise argue that any evidence to be presented by the State was testimonial. Rather, Defendant's primary argument appears to have been that the absence of Ms. Stigler as a witness warranted a mistrial and a dismissal, which the trial court denied. As this court has recognized, a witness's absence at trial in and of itself does not violate a defendant's right to confrontation without the introduction of an out-of-court statement by the State. *State v. Nuchols*, No. E2021-01415-CCA-R3-CD, 2022 WL 1769414, at *4 (Tenn. Crim, App. Dec. 15, 2022) ("Without the introduction of an out-of-court statement by the State, there was nothing for Defendant to confront, and thus, there has been no violation of his right to confrontation by the victim's absence at trial."). When Defendant made the objection, the State had not yet sought to present any out-of-court statements by Ms. Stigler, and the record did not reflect what evidence upon which the State intended to rely to establish Defendant's guilt. Our supreme court has cautioned that "in cases in which the 'issues are only tentatively suggested or the record only partially and incompletely developed[,] . . . [c]ounsel necessarily take some calculated risks in not renewing objections.'" *State v. Walls*, 537 S.W.3d 892, 899 (Tenn. 2017) (quoting *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1988)).

During the presentation of the proof at trial, Defendant did not object to the admission of the TBI records containing Ms. Stigler's statements or Ms. Mann's testimony regarding Ms. Stigler's statements contained in the records based on the Confrontation Clause. Rather, Defendant objected to the admission of the TBI records based on hearsay and lack of authentication. Thus, the trial court was never given the opportunity to determine whether the admission of the evidence violated the Confrontation Clause. "A trial court cannot evaluate an objection that is not made," and this court "will not fault a trial court for failing to rule on an unexpressed objection even if, in hindsight, the objection appears appropriate." *Vance*, 596 S.W.3d at 253. I cannot conclude that Defendant's single passing reference to "his right to confront" in which he did not challenge the

admission of any evidence or provide any further argument properly placed a Confrontation Clause objection before the trial court. *See State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 455193, at *4 (Tenn. Crim. App. July 14, 2023) ("We doubt that a single passing reference to 'hearsay' without further argument properly placed a hearsay objection before the trial court."), *no perm. app. filed*.

The second step in issue preservation requires presenting "the issue in a motion for a new trial." *Reynolds*, 635 S.W.3d at 926-27 (citing first Tenn. R. App. P. 3(e)); and then *State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018)). "In a motion for new trial, the defendant must set forth the factual grounds on which he relies, the legal grounds for the trial court's ruling, and a concise statement as to why the trial court's decision was in error." *Id.* (quoting *State v. Harbison*, 539 S.W.3d 149, 164-65 (Tenn. 2018)). When crafting argument in a motion for new trial, a defendant should not "simply allege, in general terms, that the trial court committed error, either by taking some action or by admitting or excluding evidence" but should "identify the specific circumstances giving rise to the alleged error so that it may be reasonably identified in the context of the entire trial." *Fahey v. Eldridge*, 46 S.W.3d 138, 142-43 (Tenn. 2001) (citing *State v. Ashburn,* 914 S.W.2d 108, 114 (Tenn. Crim. App. 1995)). "Grounds not raised in a motion for new trial are waived for purposes of appeal." *Harbison*, 539 S.W.3d at 164.

In this case, Defendant argued in his motion for new trial that the trial court's failure to dismiss the case or declare a mistrial "deprived" him "of the right to confront his accuser, Officer [Stigler], because the State did not produce the witness accusing [Defendant] of failing to report as a sex offender." A "well-drafted motion alleging improper admission or exclusion of testimony," however, "should identify the witness giving the testimony and provide a short and plain summary of the testimony improperly admitted or excluded" and "should also identify, with reasonable clarity, the legal ground upon which the trial court based its actions and contain a concise statement asserting the legal reasons why the court's decision was improper." *Fahey*, 46 S.W.3d at 143. Defendant did not supplement his skeletal claim with evidence or argument at the hearing on the motion for new trial. Furthermore, the trial court failed to address the claim under a Confrontation Clause rubric, and, notably, Defendant did not ask the court to do so.

When reviewing "a motion for a new trial under Rule 3(e)," this court must "view the motion in the light most favorable to the appellant, and it should resolve any doubt as to whether the issue and its grounds were specifically stated in favor of preserving the issue" because "[a]ny other method of review would result in needlessly favoring 'technicality in form' over substance." *Fahey*, 46 S.W.3d at 143. Although this Court may "supplement[] the contentions of counsel through our own deliberation and research," we "will not remedy the defect" caused in the first instance by Defendant's failure to properly address the issue, "especially where, as here, 'important questions of far-reaching

significance' are involved.'" *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (quoting *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 7 (D.C. Cir. 1982)); *see also Bristol*, 654 S.W.3d at 925.

I would conclude that Defendant failed to properly preserve the issue at trial and in his motion for new trial, and a result, he has waived plenary review of his claim. I also would reject Defendant's claim that the admission of the records constitutes plain error.

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). Five factors must be met before this court will conclude that plain error exists:

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)). All five factors must be established before this court will recognize plain error and "'complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established.'" *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (quoting Smith, 24 S.W.3d at 283). "'When asserting plain error, the defendant bears the burden of persuading the appellate court that the trial court committed plain error and that the error was of sufficient magnitude that it probably changed the outcome of the trial.'" *Id.* at 505 (quoting *State v. Smith*, 492 S.W.3d 224, 232 (Tenn. 2016)).

The Confrontation Clause "protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 784 (2024). "The Clause's prohibition 'applies only to testimonial hearsay.'" *Id.* (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006)). "To implicate the Confrontation Clause, a statement must be hearsay ('for the truth') and it must be testimonial—and those two issues are separate from each other." *Id.* at 800. Although the State argues that the TBI records containing the challenged statements fell within the hearsay exception for business records in Tennessee Rule of Evidence 803(6), the State does not dispute that the challenged statements were offered for their truth. *See id*. at 794 ("Evidentiary rules . . . do not control the inquiry into whether a statement is admitted for its truth."). Rather, the parties dispute whether the challenged statements were testimonial.

- 4 -

In *Crawford v. Washington*, the United States Supreme Court did not define the term "testimonial" as applicable to the Confrontation Clause but gave examples of statements that would be deemed testimonial. *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004) (citations omitted); *see also Dotson*, 450 S.W.3d at 63-64.

As noted by the State, the trial court admitted the records at trial pursuant to the hearsay exception for business records in Tennessee Rule of Evidence 803(6). The United States Supreme Court has cited business records and statements in furtherance of a conspiracy as examples of statements that by their nature are not testimonial. *Crawford*, 541 U.S. at 56; *see id.* at 76 (Rehnquist, C.J., concurring) (noting that the examples of testimonial hearsay cited by the majority in *Crawford* "exclude[d] at least some hearsay exceptions, such as business records and official records"). However, the Court later explained that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324.

The Supreme Court has yet to settle on a definition of "testimonial" for Confrontation Clause purposes. *Smith*, 602 U.S. at 784-85 (citing first *Davis*, 547 U.S. at 822 ("statements 'made in the course of police interrogation' were testimonial when 'the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution'"); and then *Michigan v. Bryant*, 562 U.S. 344, 358, 359 (2011) ("statements made to police 'to meet an ongoing emergency' were 'not procured with a primary purpose of creating an out-of-court substitute for trial testimony'"); and then *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) ("testimonial certificates of the results of forensic analysis were created 'under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial'")) (alterations in *Smith*).

In *Williams v. Illinois*, no definition of "testimonial" garnered a majority. *See Williams v. Illinois*, 567 U.S. 50, 82 (2012), *partially abrogated by Smith v. Arizona*, 602 U.S. 779 (2024). The *Williams* plurality observed that in those post-*Crawford* cases when the Court found a violation the Confrontation Clause involved statement that "had the primary purpose of accusing a targeted individual." *Id.* at 83. As had been done in prior cases, the plurality applied a primary purpose test, which is "an objective test" in a court examines "the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances." *Id.* at 84 (citation omitted). The plurality refined the primary purpose test to focus upon whether the out-of-court statement had "the primary purpose of accusing a targeted individual." *Id.* The plurality concluded that a DNA profile report prepared by an outside laboratory was not

testimonial because the primary purpose of the report was "not to accuse petitioner or to create evidence for use at trial" but was to "catch a dangerous rapist who was still at large." *Id.*

Justice Thomas filed a separate concurring opinion, concluding that the DNA profile report was not testimonial, thus supplying the fifth vote for the majority. *Id.* at 113 (Thomas, J., concurring). However, Justice Thomas rejected the targeted-accusation requirement set forth in the plurality opinion. *Id.* at 116-17. Instead, Justice Thomas agreed with a prior formulation of the primary purpose test that provided that a statement is testimonial if "a reasonable person would conclude that the declarant primarily intended for the statement to establish a fact and that the declarant understood that his statement might be used in a criminal prosecution." *State v. Hutchison*, 482 S.W.3d 893, 909 (Tenn. 2016) (citing *Williams*, 567 U.S. at 113-14 (Thomas, J., concurring)). Justice Thomas stated that, additionally, to be testimonial, the statement also must have sufficient "indicia of solemnity" and explained that "'formalized testimonial materials, such as depositions, affidavits, and prior testimony, or statements resulting from formalized dialogue, such as custodial interrogation," would possess sufficient "indicia of solemnity." *Williams*, 567 U.S. at 110-11 (Thomas, J., concurring) (internal quotation marks omitted).

Justice Kagan filed a dissent, joined by three other dissenting Justices, rejecting the plurality's targeted-accusation test and Justice Thomas's emphasis on formalities. *Id.* at 135-39 (Kagan, J., dissenting). Instead, Justice Kagan concluded that the DNA profile report was testimonial because the profile was completed for the purpose of establishing a fact in a criminal proceeding, *i.e.*, the rapist's identity. *Id.* at 123-25.

As the Supreme Court recognized, the "opinions in *Williams* 'have sown confusion in courts across the country.'" *Smith*, 602 U.S. at 789 (quoting *Stuart v. Alabama*, 139 S. Ct. 36, 36-37 (2018) (Gorsuch, J., dissenting from denial of certiorari)); *see also Franklin v. New York*, 145 S. Ct. 831, 831 (2025) (Alito, J., statement respecting denial of certiorari) ("Despite repeated attempts to explain what *Crawford* meant by 'testimonial statements,' our Confrontation Clause jurisprudence continues to confound courts, attorneys, and commentators."). In *State v. Dotson*, our supreme court determined the admission of autopsy reports prepared by a pathologist who did not testify at trial and another medical examiner's testimony regarding the reports did not rise to the level of plain error. *Dotson*, 450 S.W.3d at 72. The court stated that "[g]iven the uncertainty that has existed in Confrontation Clause jurisprudence since *Crawford*, and in particular the lack of clarity regarding expert reports and testimony, which was actually exacerbated by the splintered decision in *Williams*, we conclude that the defendant has failed to establish that a clear and unequivocal rule of law was breached." *Id.*

Our supreme court subsequently provided a framework for applying the varying standards set forth in *Williams*:

[W]e will look first to whether the autopsy report satisfies the broad standard advocated by the four dissenting Justices in *Williams*, under which a statement would be deemed testimonial if its primary purpose is to prove past events potentially relevant to a criminal prosecution. Once past that threshold, we will consider whether: (1) the autopsy report has "indicia of solemnity" as set forth in Justice Thomas's separate concurrence in *Williams or* (2) the primary purpose of the autopsy report was to accuse a targeted individual, in accordance with Justice Alito's plurality in *Williams*.

*Hutchison*, 482 S.W.3d at 910 (citing first *Williams*, 567 U.S. at 84-85, 110-11; and then *Davis*, 547 U.S. at 822; and then *Dotson*, 450 S.W.3d at 67-68; and then *Young v. United States*, 63 A.3d 1033, 1043-44 (D.C. 2013)) (emphasis in original). "If the autopsy report meets the threshold standard and either of the latter two standards, it is considered testimonial within the meaning of the Confrontation Clause." *Id.* at 910-11.

The United States Supreme Court's most recent opinion addressing the Confrontation Clause is *Smith v. Arizona*, which involved the presentation of testimony from an expert witness that relied upon the report of the drug analysis performed by a non-testifying expert at the defendant's trial on drug-related charges. *Smith*, 602 U.S. at 789-91. The Court concluded that the non-testifying expert's out-of-court statements were hearsay for purposes of a Confrontation Clause analysis but declined to address whether the out-of-court statements were testimonial because the defendant did not raise the issue in his petition for certiorari and the lower courts did not address the issue. *Id.* at 799-801. The Court remanded that issue to the Arizona Court of Appeals but "offer[ed] a few thoughts" based on the parties' arguments. *Id.* at 801.

The Court noted that the determination whether a statement is testimonial "focuses on the 'primary purpose' of the statement, and in particular on how it relates to a future criminal proceeding." *Id.* at 800. The Court stated that a court must "identify the out-of-court statement introduced, and must determine, given all the 'relevant circumstances,' the principal reason it was made." *Id.* at 800-01 (quoting *Bryant*, 562 U.S. at 369). As it related to the circumstances in *Smith*, the Court stated that the reviewing court first must determine which of the non-testifying expert's out-of-court statements were at issue. *Id.* at 801. Then, in addressing the primary purpose of the statements—"why [the non-testifying expert] created the report or notes—the court should consider the range of recordkeeping activities that lab analysts engage in." *Id.* The Court noted that some records from a lab analyst may not have an "evidentiary purpose" and, therefore, are not testimonial, such as lab records that are prepared primarily to "comply with laboratory

accreditation requirements or to facilitate internal review and quality control" or an analysts' notes that are "written simply as reminders to self." *Id.* The Court stated that to qualify as testimonial, "the document's primary purpose must have 'a focus on court.'" *Id.*

The Tennessee Supreme Court has not yet addressed the impact of the *Smith* majority's observation that a statement must have been prepared with a "focus on court" to qualify as testimonial upon the framework adopted in *Hutchison*. *See id.*; *Hutchison*, 482 S.W.3d at 910. I note that the statement in *Smith* has been described as "yet another iteration" of the primary-purpose test. *Franklin*, 145 S. Ct. at 835 (Gorsuch, J., statement respecting denial of certiorari). I also recognize that the Court's opinion in *Smith* was filed after Defendant's trial and that on appeal, neither party seeks to apply the primary-purpose test delineated in *Smith* rather than the framework set forth by our supreme court in *Hutchison* in determining whether the records were testimonial. Nevertheless, I view the Court's opinion in *Smith* as illustrative of the continued lack of clarity regarding "testimonial statements" for purposes of the Confrontation Clause.

The State asserts that the primary purpose of the Sexual Offender Registry records was not to prove past events that are potentially relevant to a criminal prosecution but instead to monitor and track sexual offenders following their release from custody. The State relies on Tennessee Code Annotated section 40-39-201(b)(2), which provides that "[i]t is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons." Tenn. Code Ann. § 40-39-201(b)(2). Defendant argues that the primary purpose of the Sexual Offender Registry Violation Report was to initiate the prosecution of the charge and to serve as testimony against him.

The State argues that consideration of the admission of the violation reports and Ms. Mann's testimony regarding the violation reports is not necessary to do substantial justice because the violation reports are not the only reports included in the TBI records upon which the jury could have relied to find that Defendant violated the requirements of the Sex Offender Registry by failing to register or report in person within forty-eight hours of establishing or changing a primary or secondary residence as charged in the indictment. A "Home Visit Itinerary" form reflecting a home visit by Ms. Stigler and another officer on August 30, 2021, listed an address on Moore Road in Jackson and noted "Since June 29th didn't tell me." An "Offender Tracker Form" dated August 23, 2022, listed Defendant's address as the Moore Road address with a start date of June 29, 2021. Defendant signed an "Instructions Form" on numerous occasions, including on May 19, 2021, setting forth the various rules that he was required to follow, including the requirement that he register or report in person within forty-eight hours of establishing or changing a primary or secondary residence. Through Ms. Mann's testimony, the State established that had

Defendant reported in person, a record reflecting the report would have been included in the TBI files. The files include no record of Defendant's reporting his move to the Moore Road address prior to his signing a Sex Offender Monthly Supervision Report on August 30, 2021.

Defendant challenges the State's reliance on these documents, arguing that "the State continues to rely upon statements by its absentee witness, Officer Stigler, so its new alternative argument also violates the Confrontation Clause for the same reasons previously explained." In addressing a statement's primary purpose—why the report or notes were created—the court should consider "the range of recordkeeping activities" in which the entity engages. *Smith*, 602 U.S. at 802. However, because Defendant failed to adequately challenge the admission of the records based on a confrontation violation at trial, no proof was developed regarding the reason that each of the records was created, and the record on appeal is inadequate to address Defendant's argument. *See Martin*, 505 S.W.3d at 504 (placing the burden on the defendant to persuade the appellate court that the trial court committed plain error). Accordingly, I would conclude Defendant has failed to establish that consideration of the admission of the violation reports and Ms. Mann's testimony regarding the reports was necessary to do substantial justice. *See Smith*, 24 S.W.3d at 282.

Furthermore, as noted by the State, there appears to be no existing Tennessee case law addressing the application of *Crawford* and its progeny to the admissibility to Sexual Offender Registry records. *See, e.g.*, *State v. Walls*, 537 S.W.3d 892, 904 (Tenn. 2017) (declining to grant relief under plain error review of late night court proceedings due to "a lack of a clear and unequivocal rule of law" on the issue); *Dotson*, 450 S.W.3d at 72 (concluding that "no clear rule of law" was breached by the admission of autopsy reports prepared by a non-testifying expert and the testimony of another medical examiner regarding the reports "[g]iven the uncertainty that has existed in Confrontation Clause jurisprudence since *Crawford*, and in particular the lack of clarity regarding expert reports and testimony, which was actually exacerbated by the splintered decision in *Williams*"); *State v. Fusco*, 404 S.W.3d 504, 532, 535-36 (Tenn. Crim. App. 2012) (declining to find a breach of a clear and unequivocal rule of law on an issue of first impression); *State v. Cook*, No. W2022-01534-CCA-R3-CD, 2024 WL 638764, at *7 (Tenn. Crim. App. Feb. 15, 2024) (determining that because the issue was a matter of first impression, there was no breach of a clear and unequivocal rule of law), *perm. app. denied* (Tenn. Aug. 14, 2024); *State v. Cody*, No. E2022-00947-CCA-R3-CD, 2023 WL 9006670, at *20 (Tenn. Crim. App. Dec. 28, 2023) (declining to find a "novel argument" as a basis for plain error relief), *no perm. app. filed*. The lack of existing Tennessee case law on the issue is especially problematic given the paucity of "clear guidance" in Confrontation Clause jurisprudence defining a "testimonial" statement. *See Ohio v. Clark*, 576 U.S. 237, 254-55 (2015) (Thomas, J., concurring in judgment). Accordingly, I would conclude that Defendant has

failed to establish a breach of a clear and unequivocal rule of law. *See Smith*, 24 S.W.3d at 282.

Because Defendant has failed to establish at least one of the factors for plain error relief, his claim would fail. *See Martin*, 505 S.W.3d at 504. I would conclude that Defendant has failed to establish plain error in the admission of the records and Ms. Mann's testimony and that, therefore, Defendant would not be entitled to relief.

My position does not endorse why the State proceeded the way it did at trial. Why it did so is perplexing. Yet I am also perplexed why Defendant did not specifically object to the proof when it was presented and ensure this issue was preserved. As such, I respectfully dissent from the majority's opinion reversing the judgment of the trial court.


        s/ Matthew J. Wilson
_____
MATTHEW J. WILSON, JUDGE